278 P.2d 575

**Rafael S. TAFOYA and Rosario Tafoya, Plaintiffs-Appellees,**

**v.**

**LAS CRUCES COCA–COLA BOTTLING COMPANY, a Corporation, Defendant-Appellant.**

**No. 5826.**

Supreme Court of New Mexico.

Jan. 4, 1955.

J. D. Weir and L. J. Maveety, Las Cruces, for appellant.

Gerald D. Fowlie, Albuquerque, for appellees.

McGHEE, Justice.

A verdict and judgment in favor of the plaintiffs on complaint in tort alleging the purchase and partial consumption of a bottled beverage containing foreign matter resulting in illness and damage to plaintiff, Rosario Tafoya, for the sum of $300 is the subject of attack on appeal by defendant.

Defendant's first point asserts as error the denial by the trial court of its motions for a directed verdict at the close of plaintiffs' case and at the close of the whole case. The bulk of argument under this point is that the plaintiffs did not establish actionable negligence because of their failure to prove there was no reasonable opportunity for intermediary persons to tamper with the bottle or its contents after it had passed from the exclusive control of the defendant bottler. It is also argued that the nature of the foreign substance was not established as harmful or that it was the cause of Mrs. Tafoya's illness.

On May 1, 1953, the plaintiff Tafoya purchased a six-bottle carton of Coca Cola from a retail grocery store. He took the Coca Cola home with him where it was placed in the cooling compartment of the Tafoya's electric refrigerator. There it re-

mained until May 3, 1953, when Mrs. Tafoya took out one of the bottles, opened it and drank a portion of its contents. She drank about half of the beverage when she felt something in her mouth; she then held the bottle to the light and saw something in it which was described as resembling "mother" in vinegar. She immediately became nauseated, vomiting frequently during the night. The following day she was sick and dizzy. She suffered loss of appetite and weight and remained nervous and upset.

Mrs. Tafoya consulted a physician about two weeks after her initial illness. There was testimony she had not been ill previous to the episode described. The physician testified he was satisfied Mrs. Tafoya was nervous and upset when she saw him; that he could not say independently of the Tafoyas' statements to him on the occasion of their visit what was the cause of Mrs. Tafoya's condition.

Upon Mrs. Tafoya's becoming ill, her husband replaced the cap on the bottle of Coca Cola and returned it to the grocer the following day. The grocer testified the plaintiffs had traded with him for about five years and had purchased this particular Coca Cola from him; that he examined the bottle so returned and found bugs in it in addition to the fluid content remaining. He also testified he obtained his supply of Coca Cola solely from the defendant bottling company; that the bottle in question had been obtained there.

The grocer kept his stock of bottled beverages in the front of his store. He purchased other types of bottled drinks from other bottlers. The persons delivering these products, as well as store employees and customers, had general access to such beverages. The stock was sold out promptly as a general practice. It is uncontradicted that the caps or coverings of the bottled drink in question may be removed and replaced, the bottle and cap remaining unaltered in appearance.

Thus, in this case no proof of specific acts of negligence was made. In absence of such proof a prima facie case of negligence must rest either upon an inference of negligence from circumstances shown, or the presumption of negligence arising under the doctrine of res ipsa loquitur, where it is applicable.

The basis of distinction between an inference of negligence and a presumption of negligence is carefully stated in Hepp v. Quickel Auto & Supply Co., 1933, 37 N.M. 525, 25 P.2d 197, 199.

In that case there were ample circumstances giving rise to inference of negligence, so it was unnecessary to consider the application of the doctrine of res ipsa loquitur. However, it was there stated:

"* * * It (doctrine of res ipsa loquitur) is recognized as a rule of necessity, and is based upon the postulate that under the common experience

of mankind an accident of the particular kind does not happen except through negligence. It bases its chief claim to justification on the fact that ordinarily the cause of the injury is accessible to the party charged and inaccessible to the person injured."

In this statement is embodied the definition of the doctrine given in the famous case of Scott v. The London and St. Katherine Docks Company, 3 H. & C. 596, 13 L.T. 148, 159 Eng.Rep. 665 (1865), as set forth in Shain, Res Ipsa Loquitur, to-wit:

"But where the thing is shewn to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

■■ It is generally said that for the res ipsa loquitur doctrine to apply these elements must exist: (1) That the accident be of the kind which ordinarily does not occur in the absence of someone's negligence; (2) that it must be caused by an agency or instrumentality within exclusive control and management of the defendant. 38 Am.Jur. (Negligence) § 295. The second of these requirements has been relaxed with respect to foods and beverages commercially prepared and placed with grocers or other persons for resale, so that a presumption of negligence of the bottler or manufacturer may still be predicated upon a showing there was no reasonable opportunity for intermediary tampering with the bottle or its contents before it reached the consumer. 36 C.J.S., Food, § 69a(2), p. 1119.

It should also be noted there are some jurisdictions which refuse to apply the doctrine to such cases, but it appears the majority of jurisdictions does recognize its application. See annotations in 4 A.L.R. 1559, 47 A.L.R. 148, 105 A.L.R. 1039 and 171 A.L.R. 1209. Defendant does not seem to resist the general applicability of the doctrine in proper cases, but rests its argument for reversal on the asserted failure of the plaintiffs to establish there was no reasonable opportunity for anyone to tamper or meddle with the bottle or its contents after it left the control of the defendant.

■ Defendant has stated the necessary elements of plaintiffs' case as follows:

"It was incumbent upon appellees to prove and establish (1) that the beverage was in fact bottled by appellant; (2) that by reason of appellant's negligence the impurity or foreign matter was present in the beverage; (3) that such foreign matter was harmful and injurious and was the proximate cause of appellee Rosario Tafoya's

illness or injury; and (4) if reliance was had on the doctrine of res ipsa loquitur that the harmful substance was present in the beverage at the time it left appellant's control and that there had been no reasonable opportunity for substitution or tampering by other parties."

We prefer the statement made in 36 C.J.S., Food, § 69a(1), p. 1114, as follows:

"* * * Plaintiff must show defendant's connection with the food, that is, he must show that defendant manufactured, sold, or served the food, as the case may be; he must prove that he ate or drank of the food alleged to have been unfit, that such food was unwholesome or deleterious or contained a foreign substance, and that the injuries resulted therefrom, * * * and he must show that defendant was guilty of negligence or willful misconduct in causing or permitting the food to be in the condition alleged. * * *"

The plaintiffs presented no direct testimony regarding absence of tampering with the bottle or its contents while it was in the possession of the retail grocer; however, the defendant questioned the grocer about the matter. It was established by such testimony that there was physical opportunity for the bottle to have been touched or handled by a considerable number of people, including the persons delivering other types of bottled beverages to the store, employees and customers; that the soft drinks were kept where all might serve themselves.

Defendant has brought forth many cases which examination shows to support its position. Among these cases are: Williams v. Paducah Coca Cola Bottling Co., 1951, 343 Ill.App. 1, 98 N.E.2d 164; Day v. Hammond Coca Cola Bottling Co., La.App.1951, 53 So.2d 447; Jenkins v. Bogalusa Coca Cola Bottling Co., La.App.1941, 1 So.2d 426; Rozumailski v. Philadelphia Coca-Cola Bottling Co., 1929, 296 Pa. 114, 145 A. 700; and Coca-Cola Bottling Works v. Sullivan, 1942, 178 Tenn. 405, 158 S.W.2d 721, 725, 171 A.L.R. 1200. The last cited case is a leading one in this field. On the question of intermediate tampering it was there said:

"* * * before the defendant may be charged with a presumption of negligence, on the ground that the bottle with its injurious contents was put out by the defendant, with the effect of shifting to the defendant the obligation of disproving negligence, there must not only be 'some' evidence * * that neither the bottle, nor its contents, had been tampered with, after it passed from the control of the defendant, but it must be made to appear, by a clear preponderance of the evidence, that there has been no such divided or in-

tervening control of the bottle as to afford any reasonable opportunity for it or its contents to have been tampered with by another after it left the possession or control of the defendant or its agents. Until this is thus made to appear, the burden remains on the plaintiff to prove negligence on the part of the defendant. Only by exacting this higher degree of proof that the bottle has come from the defendant to the plaintiff in its harmful condition, without substitution or subsequent tampering with, can we fairly apply the presumption, or inference of negligence rule. Thus a case is made out which ties in the injury-working thing to the control of the defendant, an essential of the res ipsa doctrine."

The testimony in the Sullivan case is very much like that before us. The retailer there operated a service station; the premises were open all night; customers and strangers had access to the place where the soft drinks were kept and frequently waited on themselves in "Piggly-Wiggly" fashion. It was the conclusion of the court that this evidence abundantly showed "reasonable opportunity, by accident or design, for substitution, or for tampering with."

 It is unnecessary to examine in this opinion other cases reaching the same conclusion as the Sullivan case, for we are of the opinion that the fact of possibility of

intervening tampering or meddling with bottled beverages should not defeat recovery where the other elements of the case are made out. We believe the words, "reasonable opportunity", should be construed with reference to *probability* rather than *possibility*. Stated otherwise, when it has been shown there was no reasonable probability of the bottle or its contents having been tampered with while in the possession of the retailer and under normal retail practice, the doctrine of res ipsa loquitur is applicable. Such is the case before us.

Cases from jurisdictions recognizing this lower degree of proof, in fact, if not expressly, are: Eisenbeiss v. Payne, 1933, 42 Ariz. 262, 25 P.2d 162; Coca Cola Bottling Co. of Southeast Arkansas v. Spurlin, 1939, 199 Ark. 126, 132 S.W.2d 828; Albany Coca Cola Bottling Co. v. Shiver, 1940, 63 Ga.App. 755, 12 S.E.2d 114; White v. Coca-Cola Bottling Co., La.App.1944, 16 So.2d 579; Underhill v. Anciaux, 1951, 68 Nev. 69, 226 P.2d 794.

 We do not believe the holding made offends the basic rule of application of the doctrine, for, as seen above, it is necessity which gives rise to it at all. Hepp v. Quickel Auto & Supply Co., supra. In view of the predominate custom among retailers of allowing purchasers of bottled beverages free access to their coolers or vending machines or stock of such goods, of which we take judicial notice, we believe the application

of the rule as made in the Sullivan case, supra, would prevent justifiable recovery for injury in all but very rare instances. If intermediary tampering with such products is of frequent enough incident to be of great concern to the bottling industry, it does not seem too insurmountable an obstacle for it to design some cap or covering for the bottles which cannot be removed and replaced without bearing visible evidence thereof.

■ This holding should not be understood as relieving a plaintiff from *any* showing that the bottle remained in the same condition as when it left the control of the bottler—it simply interprets the rule requiring a showing of no reasonable opportunity of tampering with the product by third persons as meaning no probable opportunity, recognizing that in most instances it would be impossible for a consumer to establish persons other than the bottler and retailer had no access to the article.

■ It is true the plaintiffs did not establish precisely what the noxious substance in the drink was, it being described as resembling "mother" in vinegar and as "bugs." The jury was warranted in concluding the substance was unwholesome for human consumption and there is ample testimony that upon drinking a portion of the beverage Mrs. Tafoya became ill when she had not been ill before. This satisfies the requirements of the rule noted above in 36 C.J.S.,

Food, § 69a(1). In the following cases recovery was permitted although the exact nature of the foreign substance was not established: Fisher v. Washington Coca-Cola Bottling Works, 1936, 66 App.D.C. 7, 84 F.2d 261, 105 A.L.R. 1034; Coca-Cola Bottling Co. v. Crook, 1931, 222 Ala. 369, 132 So. 898; Atlanta Coca-Cola Bottling Co. v. Sinyard, 1932, 45 Ga.App. 272, 164 S.E. 231; Atlanta Coca Cola Bottling Co. v. Dean, 1931, 43 Ga.App. 682, 160 S.E. 105; Piscatore v. V. La Rosa & Sons, 1938, 121 N.J.L. 288, 2 A.2d 327, involving prepared food; Burnette v. Augusta Coca-Cola Bottling Co., 1930, 157 S.C. 359, 154 S.E. 645.

■ Point is also made that it was error to permit evidence on rebuttal of another instance of a contaminated bottle of Coca Cola. The point is without merit. It is stated in the annotation following Gantt v. Columbia Coca-Cola Bottling Co., 193 S.C. 51, 7 S.E.2d 641, 127 A.L.R. 1185, at page 1195:

"In an action against the manufacturer, packer, or bottler of an article for personal injuries caused by a defective or injurious condition therein, evidence that like products of the same manufacturer, packer, or bottler, made at about the same time as the product causing the injury, were also subject to the same or a similar defective or injurious condition is generally held admissible."

Further, at pages 1197, 1198 of 127 A.L.R., it is said:

"The question of remoteness of evidence of the type considered in this annotation may be affected by proof that the machinery and method of manufacture had not been changed in the interval between the making of the article causing plaintiff's injury and the making of like articles containing similar defects. * * *"

Mrs. Tafoya drank her bottle of Coca Cola on May 3, 1953. The witness on rebuttal testified she drank from a bottle of Coca Cola during the period between April and September, 1953: that the Coca Cola was supplied by defendant and that it contained foreign matter. In addition, defendant's manager testified the bottling equipment at the plant was installed in 1951 and with only one change remained the same to the date of trial, the change being addition of a case packer.

It follows from what has been said that defendant's final point that there is not substantial evidence to support the verdict and judgment is denied.

The judgment will be affirmed. It is so ordered.

COMPTON, C. J., and LUJAN and SADLER, JJ., concur.

KIKER, J., not participating.