499 P.2d 741

**Carl J. SLONSKY and Lillian Slonsky, husband and wife, Appellants,**

v.

**The PHOENIX COCA–COLA BOTTLING COMPANY, an Arizona corporation, Appellee.**

**No. 1 CA–CIV 1812.**

Court of Appeals of Arizona, Division 1.

Aug. 1, 1972.

As Corrected on Denial of Rehearing Sept. 18, 1972.

Kanne & Bickart, by Lawrence J. Marks, Phoenix, for appellants.

Renaud, Cook, Miller & Cordova, by Robert H. Renaud, Phoenix, for appellee.

HATHAWAY, Judge.

Appellants, plaintiffs in the superior court, brought a tort action against the appellee bottling company. The action resulted from plaintiff Lillian Slonsky's consumption of a soft drink which allegedly contained foreign material, including metallic filings. The action came to trial before a jury and the court directed a verdict in favor of appellee-defendant at the end of the plaintiffs' case. The defendant contended (1) that the evidence was insufficient on the issue of whether there had been tampering or reasonable opportunity for tampering; (2) that there was no evidence that the drink was deleterious. Before granting the motion for a directed verdict, the court indicated dissatisfaction with the evidence that ". . . the contents of this bottle was deleterious, toxic, posisonous, harmful."

Appellants contend on appeal that the evidence was sufficient to raise a jury question as to appellee's liability and that the trial court erred in its direction of verdict against them. We agree.

"A defendant's motion for directed verdict admits the truth of whatever evidence the opposing party has introduced and any inferences reasonably drawn therefrom. (Citations omitted) On such a motion the evidence must be treated and viewed in a light most favorable to the party against whom the motion is sought. (Citation omitted) The motion should be granted only where the evidence is not sufficient to support a contrary verdict or so weak that a court would feel constrained to set aside such a verdict on a motion for a new trial. (Citations)" Davis v. Weber, 93 Ariz. 312, 314, 380 P.2d 608, 610.

The evidence discloses that on August 21, 1968, while Lillian Slonsky was sitting under a hair-dryer at the Wild Hair Beauty Salon in Westown, Arizona, her daughter brought her a Fresca from the establishment's vending machine. After having consumed a substantial portion of the drink, she heard a sound apparently of some metallic contents within the bottle and upon looking into the bottle saw a piece of metal and some sediment. She looked in the mirror and saw that her tongue looked purple. Thereafter, she became nauseated and her daughter took her to a doctor. Mrs. Slonsky vomited at the doctor's office, was ill for 3 or 4 days and was unable to resume her normal activities for about 2 weeks.

Mrs. Slonsky's daughter testified that she observed no indentation in the cap or crown of the bottle before opening it, and observed nothing different about it from any other bottle cap, nor was there anything unusual in the opening of the bottle. Upon looking inside the bottle, she saw pieces of metal, "crud" and sand. She verified her mother's illness.

One of the hairdressers testified that she saw some metal particles, some green slime and some "white looking stuff" in the bottle. According to her, looking at the contents of the bottle made her sick. The oth-

er hairdresser, Mrs. Slonsky's attendant at the time, observed a little bit of "gunk" in the bottle and stated that it looked dark and appeared to be a residue. She indicated that the residue appeared to contain metal. She also verified Mrs. Slonsky's illness at the time and stated that she never observed anyone around, or tampering with the bottles which were used to load the machine. Customers were never permitted to load the machine.

■ In regard to the deleterious nature of the drink, we are of the opinion that the evidence is clearly ample.

"One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer . . ., if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

The rule stated . . . applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or the consumer has not brought the product from or entered into any contractual relation with the seller." Restatement of Torts, 2nd, § 402A.

Strict liability in tort has been adopted in Arizona as the rule in product liability cases. See the concurring opinion in Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965) and O. S. Stapley Co. v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968). See Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094 (1957) and Coca-Cola Bottling Co. v. Fitzgerald, 3 Ariz.App. 303, 413 P.2d 869 (1966), for Arizona authority dealing with the subject of contaminated soft drinks on the basis of *res ipsa loquitur*. In a similar case from Kentucky, the plaintiff was permitted to litigate on the basis of strict liability in tort and absence of privity was not permitted to reject the claim.

Allen v. Coca-Cola Bottling Co., 403 S.W. 2d 20 (Ky. 1966).

The evidence in the following cases was considered sufficient for submission to the jury: Where a foreign unwholesome substance was found in a sealed package or bottle or food or beverage, an inference arises, or presumption of negligence on the part of the manufacturer, Opelika Coca-Cola Bottling Co. v. Johnson, 46 Ala.App. 298, 241 So.2d 327, (Ala.Civ.App. 1970), cert. denied, 286 Ala. 460, 241 So.2d 331; evidence of foreign material in a soft drink bottle prior to removal of the cap, Glasper v. Wright Root Beer Co., 216 So. 2d 586 (La.App. 1968); where the cellulose particles in a bottle of soft drink caused plaintiff's gastroenteritis was jury question, Jackson v. Cushing Coca-Cola Bottling Co., 445 P.2d 797 (Okl. 1968); unwholesomeness of thread-like objects in bottle of soft drink was jury question, Perez v. Glens Falls Coca-Cola Bottling Co., 30 A.D.2d 755, 291 N.Y.S.2d 198 (1968); bottle containing foreign matter which appeared to be pieces of cigar, raised jury question, Gardner v. Sumner, 40 Ala.App. 340, 113 So.2d 523 (1959); burnt match or other piece of wood, jury question, Jasper Coca Cola Bottling Company v. Breed, 40 Ala.App. 449, 115 So.2d 126 (1959); brown substance stuck to sides and bottom of bottle held sufficient, Machuga v. Coca-Cola Bottling Co., 153 N.E.2d 713 (Ohio App. 1957). Also see 52 A.L.R.2d 159.

■ Adulterated food was defined in A.R.S. Sec. 36–902 (the pertinent statute in 1968) as food with which "a substance has been mixed or packed therewith, . . . injuriously affecting its . . . purity . . ." or food which "consists wholly or partially of a filthy, decomposed or putrid . . . substance . . . ." Added Laws 1971. Fowler v. Coastal Coca-Cola Bottling Co., 252 S.C. 579, 167 S.E.2d 572 (1969) holds that a violation of a state pure food and drug act is negligence per se. Also see cases collected in Anno. 52 A.L.R.2d 117, 143

(§ 12). Upon consideration of the authorities and the evidence, we are satisfied that the evidence was sufficient to present a jury question on the deleterious quality of the drink.

On the question of whether the condition of the beverage was substantially unchanged from the time it left the bottler, we find the following testimony highly relevant. Lillian Slonsky testified that a man from the bottling company came by and ". . . looked at the bottle and he mentioned that it appeared to be . . . a clip that holds the hoses or something. And it may—the hoses that the Fresca goes through, and it may have gotten into the bottle somehow. . . ." This, together with the testimony that (1) the bottle appeared to be properly sealed and nothing out of the ordinary was noticed concerning the cap or the bottle, (2) the loading of the machine was done by (beauty salon) personnel and (3) no one was observed tampering with the bottles, appears to adequately establish that the soft drink was in substantially the same condition at the time of consumption as when it left the bottler.

The judgment is reversed.

KRUCKER, C. J., and, HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.