584 P.2d 205

David S. TENNEY, Debra L. Tenney and David Lane Tenney, a minor, by his next friend, David S. Tenney, Plaintiffs-Appellees,

v.

The SEVEN–UP COMPANY, and Seven-Up Bottling Company, Defendants-Appellants.

No. 3313.

Court of Appeals of New Mexico.

Sept. 5, 1978.

Writ of Certiorari Denied Sept. 19, 1978.

Joe L. McClaugherty, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendants-appellants.

Ken Cullen, Knott & Associates, Albuquerque, for plaintiffs-appellees.

## OPINION

HERNANDEZ, Judge.

Plaintiffs' complaint pled alternatively strict products liability and negligence. However, at trial plaintiffs abandoned the theory of negligence and stipulated that the only theory under which they were proceeding was strict products liability. Plaintiffs prevailed and the defendants appeal alleging two points of error; the first of "which is dispositive of this appeal . . . neither the court's findings of fact nor the evidence adduced at trial supports the judgment entered herein on the theory of strict products liability."

The plaintiff, Debra Tenney, purchased 7-Up from the defendant, Piggly-Wiggly.

She took them home and placed them in the refrigerator. Two days later she removed a bottle, opened it, poured a portion for herself and gave her 4 or 5 month old son a portion in his bottle. While feeding her baby, she noticed what appeared to be worms in the bottom of the bottle. She called the 7-Up bottler who sent a representative over. He took a sample of the substance for analysis. Mrs. Tenney retained a sample to have her own analysis done.

The 7-Up representative returned sometime later and informed Mrs. Tenney it was not worms in the bottle and that the substance was not harmful. Sometime later the Environmental Health Department of the City of Albuquerque advised her that the substance she had asked to be analyzed was "blood vessels of unknown origin."

■ The doctrine of strict products liability in tort became the law of New Mexico in the case of *Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732 (1972) when the Supreme Court adopted the Restatement of Torts, 2nd § 402A.

"§ 402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer*

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

The elements which a plaintiff has the burden of proving under this doctrine are: (1) the product was defective; (2) the product was defective when it left the hands of the defendant and was substantially unchanged when it reached the user or consumer; (3) that because of the defect the product was unreasonably dangerous to the user or consumer; (4) the consumer was injured or was damaged; (5) the defective condition of the product was the proximate cause of the injury or damage. *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965); *Swain v. Boeing Airplane Co.*, 337 F.2d 940 (2nd Cir. 1964).

Comments g, h, and i to Section 402A, supra, recite in part as follows:

"g. *Defective condition.* The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained.

"Safe condition at the time of delivery by the seller will, however, include proper packaging, necessary sterilization, and other precautions required to permit the product to remain safe for a normal length of time when handled in a normal manner.

"h. A product is not in a defective condition when it is safe for normal handling and consumption. If the injury results from abnormal handling, as where a bottled beverage is knocked against a radiator to remove the cap, or from abnormal preparation for use, as where too much salt is added to food, or from abnormal consumption, as where a child eats too much candy and is made ill, the seller is not liable.

"i. *Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by 'unreasonably dangerous' in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous."

As our Supreme Court pointed out in *Stang*, prior to the doctrine of strict product liability, a buyer of a defective and dangerous product had two possible theories of recovery against the manufacturer, negligence or breach of warranty. However, because of "shortcomings" in each of these theories, centering on matters of proof, the doctrine of strict liability evolved. The rationale being that the loss suffered by the injured party should be placed on the manufacturer, regardless of negligence or bad faith, to be included as a cost of the product. See, *Helene Curtis Industries, Inc. v. Pruitt*, 385 F.2d 841 (5th Cir. 1967). Notwithstanding, the doctrine does not make the manufacturer an absolute insurer. The strict liability is imposed as a matter of public policy because the product involves a risk of death or serious personal injury or substantial damage. *Suvada v. White Motor Company*, supra.

Viewing the evidence in the light most favorable to the plaintiffs and indulging in all reasonable inferences to be drawn therefrom, it is clearly insufficient to support a judgment. It was plaintiffs' burden to prove that the product was not only defective, defining the word defective in this circumstance as unsuitable for its intended purpose, but they also had to prove that it was unreasonably dangerous. This they failed to do. Mrs. Tenney's reaction of stomach cramps, etc., and her anxiety over her child were normal reactions over seeing some foreign object in the bottle. But the only evidence in the record was that the blood vessels were harmless.

The judgment is reversed and the case remanded with instructions to the trial court to vacate the judgment and enter judgment in favor of the defendants.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent.

Evidence little, damages small, issues and law in the court below formless, and the change of position taken on this appeal, proves the inadequacy in the presentation, both in the trial court and on this appeal.

The first count in plaintiffs' complaint proceeded on the strict liability theory that a bottle of 7-Up was in an *unwholesome condition, unreasonably dangerous.* The second count proceeded on the theory of negligence. During the trial plaintiffs abandoned their claim of negligence without explanation. Plaintiffs' attorney apparently overlooked the New Mexico Food Act, § 54–1–1, et seq., N.M.S.A. 1953 (Repl. Vol. 8, pt. 2); 35 Am.Jur.2d *Food*, § 92 (1967), and 36A C.J.S. *Food* § 59, p. 913

(1961). Good law on the subject of negligence had no value. See also, 35 Am.Jur.2d Food, § 89; 36A C.J.S. *Food* § 59; and *Tafoya v. Las Cruces Coca-Cola Bottling Company,* 59 N.M. 43, 278 P.2d 575 (1955).

Plaintiffs and defendants submitted requested findings of fact on defendants' negligence. *None of the requested findings proceeded on the theory of strict liability, and, as a result, the court made none. Both parties proceeded here on the theory of strict liability.*

Defendants claim that plaintiffs "must prove that the product of defendants was erroneously dangerous to them as user or consumer and that it was sold to them in a defective condition."

Neither of the parties submitted authority precisely in point. Under the doctrine of strict liability, plaintiffs were entitled to recover damages. *Shoshone Coca-Cola Bottling Company v. Dolinski,* 82 Nev. 439, 420 P.2d 855 (1966); *Coca-Cola Bottling Co. of Plainview v. White,* 545 S.W.2d 279 (Tex. Civ.App. 1976); *Slonsky v. Phoenix Coca-Cola Bottling Company,* 18 Ariz.App. 10, 499 P.2d 741 (1972); *Allen v. Coca-Cola Bottling Company,* 403 S.W.2d 20 (Ky. 1966).

Judge Hernandez reversed because there was no evidence that the contents of the 7-Up bottle was "unreasonably dangerous." This terminology has not been defined. John W. Wade, distinguished professor and renown authority on the subject, believed that the courts were trying to say that "unreasonably dangerous" meant that "the product must be *harmful* or *unsafe* because of something wrong with it. . . . It may suggest an idea like ultrahazardous, or abnormally dangerous, and thus give rise to the impression that the plaintiff must prove that the product was unusually or extremely dangerous. . . . There are other terms that might be used. For example,

unsafe, or harmful, *or injurious—*or, *in the case of foodstuffs, unwholesome. . . . Selling unwholesome food is negligence in itself, without anything more. This, by accurate analysis, is a form of strict liability."* [Emphasis added.] Wade, *On the Nature of Strict Tort Liability for Products,* 44 Miss. L.J. 825, 830, 832, 835 (1973). For defenses in products liability, see Noel, *Defective Products: Abnormal Use, Contributory Negligence and Assumption of Risk,* 25 Vand.L.Rev. 93. See also Restatement, Torts 2d (1965) § 402A, comment (h). "Over a span of more than a century, several states adopted a strict form of liability for food, which Titus argues is the 'only legitimate case-law support' for the strict liability rule in section 402A of the Second Torts Restatement. This 'special food warrant' supported precedents dated to medieval times, supplied the basis for a number of strict liability decisions concerning products that had analogously close contact with the [human] body." Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function and Legal Liability for Product Disappointment,* 60 Va.L.Rev. 1109, 1251 (1974); Titus, Restatement (Second) of Torts Section 402A and the Uniform Commercial Code, 22 Stan.L.Rev. 713, 742 (1970).

Based on reasons of public policy, the doctrine of strict liability was evolved to place responsibility on the party responsible for the injury occurring. In this case, it falls upon defendants. The judgment should be affirmed.