BOOCHEVER, NORRIS and REIN-HARDT, Circuit Judges.

### ORDER

Upon the vote of a majority of the regular active judges of this court, it is ordered that this case be reheard by an en banc panel of the court pursuant to Rule 25 of the Rules of the United States Court of Appeals for the Ninth Circuit. The previous three-judge panel assignment is withdrawn, 726 F.2d 1328 (9th Cir.1983).

**Michael D. GARNER, a/k/a Mike Garner, Plaintiff-Appellant,**

**v.**

**RAVEN INDUSTRIES, INC., Defendant-Appellee.**

**No. 82–1234.**

United States Court of Appeals,
Tenth Circuit.

April 11, 1984.

William Gilstrap, Albuquerque, N.M. (Willard F. Kitts and Elizabeth E. White-

field, Kitts & Whitefield, Albuquerque, N.M., with him on brief), for plaintiff-appellant.

Mark C. Meiering, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., for defendant-appellee.

Before DOYLE and LOGAN, Circuit Judges, and CHILSON, District Judge.*

WILLIAM E. DOYLE, Circuit Judge.

This is a personal injury case in which federal jurisdiction is based upon diversity of citizenship. The plaintiff herein sought recovery from the defendant manufacturer of a helium filled, blimp-shaped balloon. Plaintiff alleged that defendant, Raven Industries, Inc., was liable based on negligence and strict products liability. However, the case was tried only upon the basis of whether there was negligence on the part of Raven Industries. Strict liability was also tendered as an issue by the plaintiff. This theory was not submitted to the jury. It was, however, ruled out by the trial court.

**WHETHER THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON PLAINTIFF'S THEORY OF STRICT LIABILITY**

The trial court's refusal amounted to a granting of defendant's motion for a directed verdict on a strict liability claim.

**I. THE BACKGROUND OF THE ACTION.**

The plaintiff in this action is an employee of Permian Ford. In May, 1978, this concern purchased a helium-filled balloon for advertising purposes from defendant Raven Industries. Defendant is in the business of manufacturing and selling such balloons. The balloon came with a user's manual, an inflation kit, a device for mea-suring pressure, and a system for securing the balloon to the ground.

However, on May 6, 1978, the balloon escaped from its moorings.[1] Permian Ford contacted the FAA to warn them, as a balloon like this can present a hazard to air traffic. Permian Ford also contacted Zip Franklin and requested that the balloon be followed in his airplane and that there should be an attempt to shoot the balloon down. Meanwhile, plaintiff Garner drove his truck, following the balloon, and used the telephone in it to maintain contact with the FAA.

Plaintiff maintained that the balloon's "automatic deflation device" failed to operate. Balloons of this type apparently have a feature which causes automatic deflation at certain altitudes. The deflation feature is supposed to be activated to partially deflate an escaped balloon so that the balloon will descend to the ground. The parties argue that the primary purpose of such a device is the prevention of the balloon from being a hazard to air traffic. In addition, plaintiff maintains that a secondary purpose of the "deflation device" is to allow the owner of the balloon to recapture it.

The "deflation device" was a weak seam in the tail which splits at a certain altitude. This apparently did not operate. However, eventually the balloon was shot down by Zip Franklin, the flyer, and a companion in the airplane. It took several hours, however, for this to come about. According to the plaintiff, the failure of the deflation device to operate meant that it took much longer for the balloon to be brought down and that it travelled farther than it would have had the device operated.

In any event, the partially deflated balloon landed in a field in Texas. Plaintiff had followed the travellings of the balloon in his truck; he arrived at the scene about a minute after the balloon hit the ground.

---

* Honorable Hatfield Chilson, Senior District Judge, District of Colorado, sitting by designation.

1. At trial, the parties contested the cause of this escape. According to plaintiff, the escape was due to a sudden gust of wind. Defendant apparently argued that the balloon escaped because of improper mooring or some other negligence by Permian Ford. In any event, the actual cause of the balloon's escape is of little consequence to this appeal.

Plaintiff asserts that the partially deflated balloon continued to move across the field and plaintiff ran after it. Apparently, plaintiff tried to stop the balloon and somehow became entangled in it. The plaintiff was severely injured as a result.

This personal injury action was brought against the defendant Raven Industries. The negligence in design and manufacture was alleged. The negligence case was the one which was tried to a jury.

The plaintiff further claims that strict liability was applicable but was rejected by the trial court. The refusal of the court to submit this to the jury is here a ground for plaintiff's request for remand and a new trial.

The negligence claim was submitted to the jury with special verdict forms. The jury determined that the defendant was not negligent. It also found that plaintiff's employee, Permian Ford was negligent and that Permian Ford's conduct proximately caused the plaintiff's injury. Plaintiff filed this appeal challenging the trial court's treatment of his strict products liability claim.

## II. THE THEORIES AND ARGUMENTS OF THE PARTIES.

The principal issue then that is here presented by the plaintiff-appellant is that the trial court committed error in its refusal to instruct the jury on strict products liability. In support of his contention that strict liability was applicable, the plaintiff asserts: 1) that the defective deflation device was itself unreasonably dangerous; 2) that the balloon presented an unreasonable risk of injury to the plaintiff in its partially deflated position; 3) that it should have been a question for the jury whether there was a continuous chain of events starting with the failure of the deflation device and plaintiff's injury or whether there was an independent intervening cause. Additionally plaintiff maintains that the jury should have been allowed to determine whether plaintiff's injury would have occurred if the balloon had deflated by virtue of a properly functioning deflation device.

The defendant's contention is and was: 1) that even if the balloon was unreasonably dangerous in the sky to air traffic, that condition did not exist at the time of plaintiff's injury; 2) that any defect in the balloon's deflation device could not be regarded as the proximate cause of plaintiff's injury.

## III. CONSIDERATION OF NEW MEXICO LAW.

The question for decision, under the circumstances of this case, reduces to whether there was a problem cognizable by the doctrine of strict liability.

■ As to whether New Mexico recognizes this doctrine, the answer is that it does. See *Stang v. Hertz Corporation*, 83 N.M. 730, 497 P.2d 732 (1972). In *Stang* the New Mexico Supreme Court adopted the Restatement of Torts, 2nd, § 402A, which provides:

One who sells any product in a defective condition unreasonably dangerous to the user or a consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user ...

Moreover, New Mexico has held that the plaintiff in a strict products liability case, had the burden of proving all of the elements, including the following: first, that the product was defective; second, that the product was defective when it left the hands of the defendant and was substantially unchanged when it reached the user or consumer; third, that because of the defect the product was unreasonably dangerous to the user or consumer; fourth, the consumer was injured or damaged; and fifth, that the defective product was the proximate cause of the injury or damage. See *Tenney v. Seven-Up Co.*, 92 N.M. 158, 584 P.2d 205 (1978), *cert. denied*, 92 N.M. 180, 585 P.2d 324.

The trial court ruled, as a matter of law, that the balloon did not present an unreasonable risk of injury in its partially deflated condition on the ground. While the trial court did not elaborate, it appears that the court was ruling that even if the balloon was defective when airborne, the defect ceased posing an unreasonably dangerous

condition to the plaintiff once the balloon landed.

## IV. UNREASONABLY DANGEROUS.

■ In the case of *Skyhook Corporation v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977) the New Mexico Supreme Court considered whether a crane was unreasonably ·dangerous to the user. It there said, "obviously, the test of whether or not such a failure constitutes a defect is whether the product, absent such feature or device, is unreasonably dangerous to the user...."

In reviewing the trial court's ruling here, this court must apply this test. This court must examine all of the evidence and any contradictory evidence must be resolved in the light most favorable to plaintiff. *Skyhook, supra* 560 P.2d at 937.

■ On behalf of the defendant evidence was offered to seek to establish that even if the deflation device had operated properly, the balloon would have been in the same partially deflated condition that it was in after being shot down. Defendant contends that any defect in the deflation device was irrelevant once the balloon had reached the ground. On appeal plaintiff can point to no evidence that would contradict this position. Plaintiff argues that this should have been a question for the jury. However, it would appear that plaintiff has overlooked the fact that under New Mexico law, he has the burden of establishing that the balloon was unreasonably dangerous to him. Plaintiff has failed to come forward with proof that the balloon was unreasonably dangerous to him and accordingly the trial court was correct in granting defendant's motion for a directed verdict on this particular issue.

## V. PROXIMATE CAUSE.

■ The plaintiff also interpreted the trial court's ruling as taking the position that the plaintiff had not established that the defective product proximately caused his injury. Plaintiff argues that the question of proximate cause was one for the jury and that, therefore, the trial court was in error in granting the defendant's motion for a directed verdict.

When so considered, the issue presented is not dissimilar from that considered by the New Mexico Court of Appeals in *Carter Farms Co. v. Hoffman-Laroche, Inc.*, 83 N.M. 383, 492 P.2d 1000 (1971). In *Carter Farms* the defendant's motion for directed verdict was granted at the close of plaintiff's case and the reviewing court considered the question whether there was sufficient evidence that the product was defective and that the defect was proximately the cause of plaintiff's injury. The court held that while proof may be by circumstances alone, the plaintiff was required to establish that the facts and circumstances, together with all appropriate inferences, gave rise to the conclusion with reasonable certainty that the product was defective and that this defect proximately caused plaintiff's injury.

Neither this court nor the trial court is concerned with whether the balloon, in any manner, caused plaintiff's injury. On this issue of proximate cause, the question before this court is whether there was sufficient evidence to warrant submission to the jury that the specific defect alleged by the plaintiff, the deflation device, caused plaintiff's injury.

Plaintiff would have us conclude that all of the events on the day in question, that is when the injury occurred, are to be considered as one causal chain which began when the balloon escaped and ended with his injury. This, however, does not result in a conclusion that the specific defect alleged was the proximate cause of the injury. It is not shown, though, how the alleged defective deflation device produced the injury. The evidence established that had the deflation device worked properly, the balloon would have descended at an earlier time. No evidence is presented or no reference is made to evidence which would substantiate his claim that had this occurred, he would not have been injured. Furthermore, plaintiff has not provided any evidence, or called attention to any, to support a claim that the defective deflation device had anything whatsoever to do with

his injury. Therefore, none of the evidence adduced at trial or any legitimate inferences therefrom, support plaintiff's claim that the defective deflation device was the proximate cause of the injury.

The trial court here properly refused to submit the strict liability claim to the jury.