## 18918

Randall Troy FOWLER, by His *Guardian ad Litem*, Troy Fowler, Respondent, v. COASTAL COCA-COLA BOTTLING CO., Inc., Appellant

(167 S. E. (2d) 572)

*Messrs. McCaskill & Thompson,* of Conway, *for Appellant,*

*Messrs. Rankin & Johnson,* of Conway, *for Respondent,*

May 7, 1969.

Moss, Chief Justice.

This action was brought by the respondent, Randall Troy Fowler, through his *guardian ad litem,* against Coastal

Coca-Cola Bottling Co., Inc., the appellant herein, for the recovery of damages for personal injuries proximately caused by the drinking of a Coca-Cola containing an impure, foreign, deleterious and adulterated substance or ingredient. It is alleged that the beverage was manufactured by the appellant and purchased from one of its retail dealers. The answer of the appellant was a general denial.

This case came on for trial before The Honorable Claude M. Epps, Judge of The Civil and Criminal Court of Horry County, and a jury, on May 23, 1968, and resulted in a verdict in favor of the respondent for actual damages. In due course, the appellant made motions for a nonsuit, a directed verdict, and judgment *non obstante veredicto,* all of which were overruled, and this appeal involves the correctness of these rulings.

It appears in this case, that the appellant, who operates its bottling plant in the city of Marion, sold the Coca-Cola in question to a retail store in the town of Nichols, which, in turn, sold it to the mother of the respondent.

The mother of the respondent testified that at approximately 8:30 P.M., on December 27, 1967, she served him, a child approximately three years of age, a bottle of Coca-Cola. The child drank from the bottle until there remained about two inches of the product in the bottle. When the child had finished drinking, the bottle was given back to the mother who replaced the cap thereon and put the bottle back in the refrigerator, and within three or four minutes the child complained that his stomach was hurting. He was then put to bed and at about 10:00 P. M. he woke up vomiting and asked for a Coca-Cola. The father took the same bottle from the refrigerator, removed the cap and poured the remains into a glass. It was at this time that a foreign substance was seen in the Coca-Cola. The father and mother testified that they did not know what the substance was but that it was dark in color and slick and slimy to the touch. The Coca-Cola was poured back into the bottle, recapped, and returned to the refrigerator. It was testified

that the respondent was ill all during the night and continuously vomited and was taken to the Conway Hospital in the early morning of December 28, 1967, and there treated by Dr. Howard B. Smith. The father testified that he told the physician about his child drinking a Coca-Cola and was sent by the physician to his home for the purpose of bringing back the remaining portion of the Coca-Cola to his office so that the same could be examined.

Dr. Howard Smith testified that the father brought to him a small uncapped bottle with about one and one-half to two inches of Coca-Cola in the bottle, and in the bottom of it was a sediment described as being gelatinous and black and mossy in appearance. The bottle was sent to the hospital laboratory for examination of the contents. The liquid in the Coca-Cola bottle was examined by Dr. C. W. Delia, a pathologist in the hospital, and it was determined that the Coca-Cola contained a form of yeast, and such was described as a living organism of the vegetable kingdom. This pathologist, called as a witness by the respondent, gave as his opinion that where a bottle of Coca-Cola had been opened sixteen hours before that any sugar containing solution therein would support the growth of yeast and from what he saw the yeast could have developed between the time the bottle was opened and the time he saw it. In answer to a question of whether or not yeast will make a person sick, the pathologist said: "There are certain yeasts that cause certain diseases." It is apparent from this answer that he did not identify the yeast found in the bottle as being the type that would cause any disease or illness.

Dr. Howard Smith, a witness for the respondent, testified that he first saw the child in the emergency room of the Conway Hospital and that he appeared pale and complained of abdominal pains. He prescribed certain treatment for him. While under cross-examination he testified that at the time in question there was a rash of virus attacks among children in the community and that such took on almost the proportion of an epidemic. This physician said that virus

was the best possibility for a diagnosis of the child's illness. After this physician had the report of the pathologist that the Coca-Cola contained yeast he did not change the type of treatment he was giving the child. This witness also testified that he made a research, in his library, to determine whether or not yeast might be harmful to human beings. In response to this question his answer was "Yes". He then said:

"Q. Did you find any evidence of it?

"A. I will have—yes, I did.

"Q. What was that?

"A. Well, in the monilia which causes the thrush in a child's mouth and the rash on their bottom is a yeast.

"Q. I see. And this is the only thing you found?

"A That is correct.

"Q. And you found no evidence of that on this child on this occasion?

"A. No evidence of that."

This being an action to recover damages for illness allegedly sustained by the respondent as a direct result of drinking a Coca-Cola, bottled by the appellant, containing an impure, foreign, deleterious substance or ingredient, placed the burden upon the respondent to show by a preponderance of the evidence that the appellant was negligent in at least one of the particulars set out in his complaint and that such negligence was the proximate cause of his alleged illness and injury. *Burnette v. Augusta Coca-Cola Bottling Co.,* 157 S. C. 359, 154 S. E. 645.

The appellant here is charged with manufacturing and selling Coca-Cola in violation of the "Pure Food and Drug Act". Section 32-1511 *et seq.,* of the 1962 Code. We have held that the violation of this statute is negligence *per se. Gantt v. Columbia Coca-Cola Bottling Co.,* 193 S. C. 51, 7 S. E. (2d) 641, 127 A. L. R. 1185. However, the violation of the aforesaid statute, while negligence *per se,* will not support a recovery for damages unless such violation proximately caused or contributed to the injury.

*Scott v. Greenville Pharmacy,* 212 S. C. 485, 48 S. E. (2d) 324, 11 A. L. R. (2d) 745.

It is the position of the appellant that the presiding ∎ judge erred in failing to direct a verdict in its favor on the ground that there was no proof that the illness of the respondent was proximately caused by any negligence of the appellant.

We have held that where the cause of plaintiff's injury may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has failed to carry the burden of establishing that his injury was the proximate result of defendant's negligence. *Messier v. Adicks,* S. C. 161 S. E. (2d) 845.

Under the evidence here, the real cause of the illness of the respondent is left to speculation and conjecture and as a result he has failed to prove that his illness was proximately caused by the actionable negligence of the appellant.

There are two possible causes of the illness of the respondent. The first one is a virus infection, and if the illness resulted from such, the appellant would not be liable therefor. The respondent's own medical witness testified that a virus was the best possibility for a diagnosis of his illness. The other possible cause of the illness of the respondent was the ingestion of a Coca-Cola containing yeast. There was no testimony that the respondent's illness could be attributed to the ingestion of a Coca-Cola containing yeast. The pathologist, who testified in behalf of the respondent, did say that there are certain yeasts that cause certain diseases but he did not identify the yeast that he found as one that would cause a disease or illness. The respondent's other medical witness testified that he found no evidence from which he could conclude that the illness of the respondent was caused by the ingestion of yeast.

It is our conclusion that the respondent failed to offer evidence sufficient to permit a finding that his illness was proximately caused by the negligence of the appellant.

Reversed and remanded for entry of judgment in favor of the appellant.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.