## 19418

Arstrilla OGLESBY, as Temporary Administratrix of the Estate of Willie Louis Oglesby, Respondent, v. Samuel SMITH, Appellant.

(188 S. E. (2d) 856)

*Messrs. Rufus M. Ward,* of *Ward, Howell, Barnes & Long,* Spartanburg, and *Jonathan Z. McKown,* of Gaffney, *for Appellant,*

*James R. Thompson, Esq.,* of *Saint-Amand & Thompson,* Gaffney, *for Respondent,*

May 12, 1972.

BUSSEY, Justice.

In this wrongful death action plaintiff's intestate, Oglesby, was a passenger in an automobile operated by the defendant when the same was involved in an accident on March 1, 1970. He died eighteen days later from a subdural hemorrhage. Upon trial, a motion of defendant for a directed verdict was overruled and a verdict for plaintiff ensued. The sole question on appeal is whether there was any competent evidence of causal connection between an injury received in the accident and the hemorrhage from which Oglesby admittedly died.

While there are conflicts in the evidence and differing reasonable inferences therefrom, it is elementary that in determining whether or not a directed verdict should have been granted all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. The disposition of this appeal is controlled by the principles enunciated in the case of *Grice v. Dickerson,* 241 S. C. 225, 127 S. E. (2d) 722, from which we quote the following,

"The rule has been established in this State that 'when the testimony of medical experts is relied upon to establish causal connection between an accident and subsequent disability or death, in order to establish such the opinion of the experts must be at least that the disability or death "most probably" resulted from the accidental injury.' *Cross v. Concrete Materials,* 236 S. C. 440, 114 S. E. (2d) 828.

"Where, however, the testimony of medical experts is not solely relied upon to establish such causal connection, whether the presence or absence of such medical testimony is con-

clusive depends upon the particular facts and circumstances of the case."

Viewed in the light most favorable to the plaintiff, briefly the facts are as follows. The accident was a serious one, Oglesby sustaining a blow to and cut on the forehead and being rendered unconscious. He was hospitalized but discharged on March 4th. He was returned to the hospital on March 18th in a comatose condition and died that night. While only 27 years of age, he had previously had difficulty with and been treated for hypertension, and his blood pressure was excessively high upon his return to the hospital on March 18th. There is no suggestion, however, that he showed any symptoms of hypertension while hospitalized from March 1st to March 4th.

Three physicians, including a pathologist who performed an autopsy, testified. Briefly summarized, the medical evidence is to the effect that the area of the subdural hemorrhage showed such to be a minimum of a week old at the time of death; that the results of the autopsy, known symptoms, etc. were consistent with the subdural hemorrhage having resulted from the blow to the head sustained by Oglesby in the automobile accident. Also considered by the physicians as a possible or probable cause of the subdural hemorrhage was hypertension. No physician, however, was willing to testify literally that the fatal subdural hemorrhage was "most probably" caused by either of the recognized possible causes. They all agreed that such could have been caused by the head injury and not have manifested itself until after Oglesby's discharge from the hospital on March 4th.

Despite previous difficulty with hypertension, there is evidence that prior to the accident Oglesby was employed at United Beef Company as a hide checker; was jolly, friendly and a good worker; had a good memory and was able to manage his affairs and do things for himself; he was seen in good, normal condition shortly before the accident, and he apparently displayed no symptoms of hypertension while hospitalized following the accident.

As early as five days after the accident his condition had deteriorated to such extent that he required constant attention and help from his mother and sister; he suffered headaches; was unstable on his feet; lost his appetite; was more or less bedridden; failed to recognize people and was not able to attend to his own personal hygiene or routine matters. All the medical witnesses agreed that the foregoing matters were symptomatic of a subdural hematoma.

Here, as in *Grice,* reliance was not upon medical testimony alone to show causal connection between the injury and subsequent death of Oglesby, but rather, in addition, upon circumstances surrounding the injury and the events which followed. The medical testimony alone was not relied upon to show causal connection but rather that, from the other facts and circumstances, a conclusion of causal connection between the accidental injury and the fatal subdural hemorrhage did not involve entry into the field of conjecture, surmise or speculation.

We conclude that the lower court correctly overruled the motion for a directed verdict, and the judgment below is accordingly

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.