### 19484

Helen R. BURKE, By Her Guardian Ad Litem, John T. Burke, Respondent, v. Hugh O. Pearson, Jr., Appellant

(191 S. E. (2d) 721)

*Messrs. T. Reeve Sams* and *Julian S. Levin,* of *Levin &
Sams,* Beaufort, *for Appellant,*

*James C. Sanders, Esq.,* of *Dowling, Dowling, Sanders & Dukes, P.A.* Beaufort, *for Respondent,*

*Messrs. T. Reeve Sams* and *Julian S. Levin,* of *Levin & Sams,* Beaufort *for Appellant,*

September 12, 1972.

BRAILSFORD, Justice:

This malpractice action against Dr. Hugh O. Pearson, Jr., a Beaufort physician, resulted in a verdict against him for actual and punitive damages, and he appeals, principally upon the ground that the evidence raised no submissible issue as to actionable negligence or willfulness.

The controversy concerns a heating pad burn inflicted upon Helen R. Burke, while she was Dr. Pearson's patient in Beaufort County Memorial Hospital, to which she was admitted May 14, 1969. Mrs. Burke, age sixty-seven, had been in poor physical and mental health for a number of years. She suffered from chronic disease of the back and other ills. She was extremely underweight, markedly depressive and,

at times, agitated. When aroused, she complained of pain and frequently demanded drugs, saying to the nurses, "knock me out!" Under Dr. Pearson's orders she periodically received seven different medications, primarily to relieve her pain and depression. Most of these were sedatives and antidepressants. One, however, a synthetic analogue to morphine was an analgesic.

On May 15, the second hospital day, Mrs. Burke asked that her heating pad be sent for her to use on her lower back. Instead, the doctor ordered the use of a hospital heating pad. On May 19, the sixth hospital day, a nurse noted an area of redness, or erythema, on the lower back and buttock where the heating pad had been in use. Dr. Pearson assumed, as had the nurse, that the heating pad had caused a burn, and the erythema was so treated. By the fifth day thereafter, the tissues in the center of the reddened area were dead. Separation of tissues, infection and drainage followed. On June 14, the ulcerated area was surgically debrided, leaving a sizeable open wound.*

Mrs. Burke was dismissed from the Beaufort hospital on June 16. In the "Discharge Summary" entered on the hospital record, Dr. Pearson wrote: "On the 5th hospital day a large burn overlying the right sacral prominence was noted secondary to the use of a heating pad. This progressed to infection, drainage, requiring debridement and initially (sic) developed into a . . . decubitus ulcer."

By the time of trial, Dr. Pearson had changed his diagnosis to simple decubitus ulcer (bedsore) unrelated to use of the heating pad. The other doctors who testified in his behalf were likewise positive that a heating pad burn could not account for the depth and magnitude of the wound, which they unanimously characterized as a decubitus ulcer. One of them did testify that such an ulcer could be *precipitated* by a heating pad burn. However, we see no need to examine

* Ultimately, Mrs. Burke was admitted to a Charleston hospital where a skin graft was performed at the site, successfully replacing the missing tissues.

the testimony in detail on the issue of causation. Dr. Pearson initially diagnosed the injury as a heating pad burn, and adhered to that view even when the full extent of the ulceration was known. The circumstances under which the lesion developed, especially in light of the original diagnoses by doctor and nurse, give rise to a reasonable inference that Respondent's injury, whether burn or bedsore, was caused or precipitated by heat from the pad: See *Oglesby v. Smith,* 258 S. C. 392, 188 S. E. (2d) 856 (1972); *cf. Fowler v. Coastal Coca-Cola Bottling Co.,* 252 S. C. 579, 167 S. E. (2d) 572 (1969). The dispositive issue is whether the record contains evidence reasonably sustaining the jury's finding of negligence and willfulness.

The complaint alleged misconduct in seven particulars. One specification found fault with the appellant's failure"to be present himself, or to have some other responsible person present, to be sure that the Plaintiff was not burned." Another specification complained of appellant's prescribing the pad for unlimited use when he should have known that the hospital staff was inadequate to "carefully watch over the Plaintiff to be sure that she was not burned . . ." The remaining specifications assigned negligence in authorizing use of the pad without limitation when the patient was heavily sedated and unlikely to sense incipient injury from the pad.

The medical witnesses testified that the use of the heating pad was sound medical practice. They further testified that the terse order authorizing the heating pad—"Heating pad to back"—was sufficient as written; that routine supervision by nurses was implicit in the order; that such supervision was properly to be assumed; and that no explicit cautions or limitations were needed.

Respondent offered no testimony that the standard of care accepted and employed by reasonably prudent physicians under the circumstances related included explicit instructions as to precautions to be taken. Such testimony is normally required. *Bessinger v. Deloach,* 230

S. C. 1, 94 S. E. (2d) 3 (1956). However, respondent relies on the well-established exception that expert testimony is unnecessary when the subject matter lies within the ambit of common experience, so that no special learning is needed to evaluate the physician's conduct. *Bessinger v. DeLoach, supra.*

Dr. Pearson disclaims the existence of **competent** ■ evidence that the drugs administered, in the dosages prescribed, rendered Mrs. Burke unable to detect the pain of a burn. However, the testimony of the patient's husband and daughter, and the nurses' and doctor's notes made during the period of heating pad use, amply confirm the patient's lethargy and somnolence. This condition was reasonably attributable to the various drugs continually administered. It was for the jury to determine the extent to which her ability to look out for herself was impaired by sedation.

Plaintiff contends that expert testimony was unnecessary to evaluate the defendant's conduct in authorizing the use of a heating pad *at all,* considering her sedated condition. She introduced in evidence a hospital heating pad similar to the one used. It operates on a single temperature, which cannot be varied. The pad's plastic cover carries the following information:

"UNIFORM LOW—TEMP HEAT (Approx. 125°— 130° F.)"

Eleven numbered instructions follow. Two of these are revelant:

"1. Due to varying sensitivity of the individual's skin, temperatures sufficiently high to cause burns may result from the improper use of this pad regardless of the control switch setting. Therefore, the patient's skin at the point of application should be inspected frequently if the pad is applied directly to the body.

. . .

"8. Do not apply this pad to a helpless person (an infant, an invalid, a sleeping or unconscious person) unless carefully attended."

We think these instructions, unobjected to, were relevant to the issue of negligence. See, *e.g., Monk v. Doctors Hospital,* 131 U. S. App. D. C. 174, 403 F. (2d) 580 (1968) *cf. Sanzari v. Rosenfeld,* 34 N. J. 128, 167 A. (2d) 625 (1961). But Mrs. Burke presented no evidence that appellant had reason to think these instructions would be disregarded by trained hospital nurses; nor was there evidence that the nurses were derelict in this respect. Plaintiff presented no evidence in support of her allegation that the hospital staff was inadequate. She has not contended, despite her allegation, that her physician or someone in his stead should have been constantly present for monitoring of the pad's use. There is no showing that the nurses by the exercise of due care should have discovered the erythema any sooner than it was in fact discovered. There is no evidence that the nurses failed to examine the patient frequently. If the manufacturer's instructions are accepted as correctly expressing the duty of care, there is simply no evidence that duty was breached.

But even assuming that the nursing staff failed to attend the patient with due care, the physician has not been connected with such misconduct. Respondeat superior principles do not apply to the relationship of private physician and hospital nurse while the latter is carrying out her general duty of attending patients in his absence. The medical testimony unanimously indicated that proper administration of the heating pad was reasonably to be expected without special directive. If the risk of harm from improper use of a heating pad is common knowledge, or is revealed by the instructions on the pad, we think that the physician is not derelict in assuming, absent notice to the contrary, that the nursing staff will share that knowledge and act accordingly. See the early annotation at 4 A. L. R. 1527 (1919) and supplements thereto; 70 C. J. S. Physicians and Surgeons § 54f, at 979 (1951); 61 Am. Jur. (2d), Physicians, Surgeons and Other Healers, Sec. 164 (1972).

In support of her contention that a heating pad should not have been used at all in her sedated condition, respondent was permitted, over objection, to introduce in evidence a household heating pad with three temperature settings. The instructions on the box thereof substantially duplicated the first instruction on the hospital pad. The hospital pad's eighth instruction was also closely followed, but the phrase, "unless carefully attended," was omitted. Thus, the household heating pad's instructions cautioned against any use on a sleeping or unconscious person. Plaintiff relies on these instructions to buttress her contention that heating pads are commonly known to be dangerous when used on sleeping or otherwise insensible persons. We think that the instruction on this pad, of different design and intended for use under different circumstances, is palpably insufficient to justify a finding that the use of a heating pad specifically designed for low-temperature operation in a hospital environment, where sedation is commonplace, involves unreasonable risk of injury to a sedated patient, even when properly monitored. Defendant refused plaintiff's request to use her own heating pad but he permitted use of the hospital pad only, as to which there was no evidence of unreasonable risk.

Appellant's motion for directed verdict should have been granted.

Reversed.

Moss, C. J. and LEWIS and BUSSEY, JJ., concur.

LITTLEJOHN, J., Dissents.

LITTLEJOHN, Justice (dissenting):

I respectfully dissent and would affirm the judgment of the lower court.

The complaint alleges several specifications of carelessness and recklessness on the part of the defendant. In order to create a jury issue the plaintiff needs to submit evidence as to only one specification. Specifications (a), (b) and a portion of (f) are as follows:

"(a) In prescribing or ordering the electric heating pad for the Plaintiff knowing full well that the Plaintiff was in an unconscious or only partially conscious condition and was not capable of doing anything to protect herself from a severe burn most likely to result therefrom.

"(b) In prescribing or ordering the electric heating pad to be placed under or on the Plaintiff in her unconscious or only partially conscious condition without prescribing any conditions or limitations whatever in its use by the nurses.

\*   \*   \*

"(f) After ordering and/or prescribing the various potent drugs and/or medicines which resulted in the Plaintiff being rendered unconscious or only partially conscious, in ordering and/or prescribing the unrestricted and unlimited use of the electric heating pad . . ."

When the evidence is susceptible of more than one reasonable inference it becomes the duty of the trial judge and of this Court to let the jury decide the issues. In my view there is clearly evidence from which the jury might reasonably conclude that Dr. Pearson failed to use due care by failing to more specifically instruct the nurses relative to the use of the heating pad.

I agree with the majority opinion wherein it held that there was evidence warranting the conclusion that the injury was a burn caused or precipitated by the heating pad, and agree that there was evidence warranting the conclusion that Mrs. Burke was not able to care for herself and that her ability to care for herself was impaired by sedation from the seven drugs. I cannot agree that the only reasonable inference to be drawn from the whole of the evidence is that Dr. Pearson fully discharged his duty to his patient and was not at least negligent.

When a trial Judge directs a verdict, in effect he says to the jury: "Reasonable men cannot disagree about the facts in this case; the jury's judgment is not needed; you must deny the plaintiff recovery." Simply stated, the facts in this

case just do not warrant such action on the part of the judge. In the determination of negligence, one must take into consideration all of the circumstances. One of the considerations was the knowledge Dr. Pearson had relative to the condition of his patient before she entered the hospital and the condition he created by directing the use of the seven drugs. He testified that he had treated Mrs. Burke for several years for chronic back disease and that she was hospitalized to determine whether the organic causes of her back injury had become worse or not. He stated that if they were not worse, " . . . then we planned to transfer her to a psychiatric hospital for treatment of her agitation and depression." In actuality he committed her to the State Mental Hospital in Columbia three or four months later.

Dr. Pearson knew or should have known better than any other person the true condition of Mrs. Burke, and the effects of the combination of drugs he was administering. A doctor is duty bound to give to the nurses and others instructions necessary to ensure the safety of his patient.

"Failure of a physician or surgeon to give the patient or his family or attendants all necessary and proper instructions as to the care and attention to be given to the patient and the cautions to be observed is negligence which will render him liable for resulting injury" 70 C. J. S. Physicians and Surgeons § 48h (1951).

"What are reasonable care, skill, and diligence depends largely on the circumstances of the particular case and on the duty to be performed, the degree requisite being in proportion to the nature of the case. Thus it has been held that reasonable care must be proportionate to the risks and dangers to be apprehended and guarded against in the particular case and to the importance and delicacy of the undertaking, and that such care and attention must be given as are required by the exigencies of the case." 70 C. J. S. Physicians and Surgeons § 45 (1951).

The instruction "heating pad to back" may have been sufficient for unsedated patients with no mental difficulty. Appar-

ently the nurses did for this patient what nurses would normally do for a patient sensitive to pain because the doctor gave instructions normally given for a patient sensitive to pain. Such instructions were obviously insufficient. The heating pad burned the patient. The general instructions printed on the hospital heating pad can be of little comfort to the doctor in this case. Such instructions were general and for normal use. It cannot be said as a matter of law that no other instructions were required under the facts here developed.

Nor do I think that medical testimony was required to prove negligence. The case involved evidence which a jury could evaluate independent of medical testimony, or at least with the aid of medical testimony. To say, as did the medical witnesses, that the giving of instructions "heating pad to back" is standard procedure overlooks the heart of the issue. The patient was not a standard case. Her ailments and condition were such as to require special instructions. At least the evidence is susceptible of more than one reasonable inference on this point and the jury should have been permitted to say which inference was more plausible.

The other exceptions challenging the introduction of evidence and the instructions of the judge to the jury are without merit.

I would affirm the judgment of the lower court.