MILES, APPELLANT, *v.* GENERAL TIRE & RUBBER COMPANY ET AL., APPELLEES.

(No. 82AP-864—Decided June 21, 1983.)

Mr. E. Bruce Hadden, for appellant.

Messrs. Vorys, Sater, Seymour & Pease, Mr. Herbert R. Brown and Ms. Mary Ellen Fairfield, for appellee General Motors Corporation.

Messrs. McNamara & McNamara and Mr. John L. Miller, for appellee BCJ Corporation.

Messrs. Porter, Wright, Morris & Arthur and Mr. Terrance M. Miller, for appellee General Tire & Rubber Co.

Messrs. Crabbe, Brown, Jones, Potts & Schmidt and Mr. William T. McCracken, for appellee George Byers Sons, Inc.

Mr. David L. Day, for appellee Leslie Fay, Inc.

Messrs. Sanford, Fisher, Fahey & Boyland and Mr. Richard P. Fahey, for appellees Haymaker, David Crystal Company and General Milles, Inc.

McCormac, J. Plaintiff-appellant, Jayne Miles, was a passenger in a 1978 General Motors Corporation motor home which collided with a guardrail, causing the gas tanks to rupture. The gasoline, which escaped, caught fire. While attempting to leave from the only exit door in the motor home, plaintiff received severe burns.

Plaintiff originally joined General Motors Corporation ("GMC"), the manufacturer; George Byers Sons, Inc. ("Byers"), the original seller of the motor home; General Tire & Rubber Co. ("GTR"), the manufacturer of the tires used on the motor home; and BCJ Corporation ("BCJ"), the lessor of the motor home, as defendants. The primary thrust of plaintiff's claims was that the GMC motor home was defective in its design, since the only exit door was located directly over the gasoline tanks, and that the tires placed on the motor home were overloaded and not appropriate for that type of vehicle.

At the close of plaintiff's opening statement, the trial court directed a verdict in favor of BCJ. GTR and Byers received directed verdicts at the conclusion of plaintiff's case. The jury returned a verdict in favor of plaintiff against defendant GMC in the amount of $60,000.

Plaintiff subsequently executed covenants not to sue with GMC, GTR and Byers. This appeal is against BCJ only.

Plaintiff has asserted the following assignments of error:

"1. The Trial Court erred in directing a verdict in favor of Defendant, BCJ, Inc., after Plaintiff's amended opening statement.

"2. The Trial Court erred in excluding the General Tire & Rubber Co. recall letters.

"3. The Trial Court erred in permitting Officer Jenis to testify that Axel Baudach (the driver of the motor home) told him in the emergency room, 'I may have dozed off for a second.' "

In her complaint, plaintiff alleged that

BCJ is an Ohio corporation with its principal place of business in Columbus and that it was formed for the purpose of leasing motor homes, including the motor home involved in this case. BCJ answered, admitting those allegations.

Plaintiff also alleged that the motor home was defectively designed because of the location of the only exit door from the motor home over the gas tanks, and that tires were installed on the vehicle which were overloaded and likely to rupture. Plaintiff further alleged that defendants knew of these defects and failed to give notice to the lessee.

BCJ denied the allegations of defects and failure to warn.

Plaintiff gave a lengthy opening statement to the jury where the nature of the motor home and its alleged defects were described in detail. The only reference to BCJ was that it leased the motor home to plaintiff's parents, who were also occupants at the time of the crash and fire.

Following the opening statement, BCJ moved for a directed verdict, which was granted, and BCJ was dismissed from the case. The trial court gave no reason for the directed verdict nor was any reason requested on the record.

The primary issue is whether the trial court erred in directing a verdict against plaintiff in favor of BCJ based upon the allegations of the opening statement. From the opening statement and pleadings, it must be assumed that BCJ is a commercial entity whose business is leasing motor homes and that it leased a motor home that was defectively designed to plaintiff's parents for her use also and that, as a result of the defective design or overloading of the tires, plaintiff was proximately injured.

The size or volume of BCJ's business as a commercial entity leasing motor homes was not before the trial court when it granted a directed verdict on the opening statement.

As recently stated by the Ohio Supreme Court:

"A trial court should exercise great caution in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action * * * and the statement must be liberally construed in favor of the party against whom the motion has been made." *Brinkmoeller* v. *Wilson* (1975), 41 Ohio St. 2d 223 [70 O.O.2d 424], syllabus.

A directed verdict can only be sustained if a lessor of motor homes has no responsibility for injuries caused by the defective design of a motor home commercially leased by it.

In *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466], paragraph one of the syllabus, the Supreme Court held that there is a cause of action in strict liability against one who sells a product in a defective condition unreasonably dangerous to the user or consumer for physical harm thereby caused if the seller is engaged in the business of selling such a product which is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. *Temple* was predicated upon Section 402A of Restatement of Torts 2d.

In paragraphs one and two of the syllabus of *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456 [21 O.O.3d 285], the Supreme Court adopted Section 402A for design defects as follows:

"1. A cause of action for damages for injuries caused or enhanced by a product design defect will lie in strict liability in tort. (*Temple* v. *Wean United, Inc.*, 50 Ohio St. 2d 317 [4 O.O.3d 466], approved and followed.)

"2. A product is in a defective condition unreasonably dangerous to the user or consumer if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." See, also, *Knitz* v.

*Minster Machine Co.* (1982), 69 Ohio St. 2d 460 [23 O.O.3d 403].

BCJ argues that *Temple, Leichtamer* and *Knitz* apply only to sellers and manufacturers and do not apply to lessors even though the lessor may be in the business of leasing the product. Plaintiff concedes that the consumer expectation test for strict liability for design defects has not specifically been extended to lessors in Ohio, but argues that such extension should be made in accordance with the trend in other jurisdictions and the weight of authority.

There is no logical reason to distinguish commercial lessors from manufacturers or sellers for the application of strict liability for dangerously defective goods. Commercial lessors, like manufacturers and sellers, regularly introduce potentially dangerous products into the stream of commerce and similarly are in a better financial and technical position than lessees to insure against the risk of injuries from defectively designed products. Commercial lessors are also better able to analyze the potential danger of a product than lessees since they deal regularly with the product. See *Brimbau* v. *Ausdale Equip. Rental Corp.* (R.I. 1982), 440 A. 2d 1292. Jurisdictions which have held that commercial lessors should be held strictly liable for leasing defective products are as follows: *Bachner* v. *Pearson* (Alaska 1970), 479 P. 2d 319; *Lechuga, Inc.* v. *Montgomery* (1970), 12 Ariz. App. 32, 467 P. 2d 256; *Price* v. *Shell Oil Co.* (1970), 2 Cal. 3d 245, 466 P. 2d 722; *McClaflin* v. *Bayshore Equip. Rental Co.* (1969), 274 Cal. App. 2d 446, 79 Cal. Rptr. 337; *Martin* v. *Ryder Truck Rental, Inc.* (Del. 1976), 353 A. 2d 581; *Stewart* v. *Budget Rent-A-Car Corp.* (1970), 52 Hawaii 71, 470 P. 2d 240; *Galluccio* v. *Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E. 2d 178; *Crowe* v. *Public Building Comm. of Chicago* (1978), 74 Ill 2d 10, 383 N.E. 2d 951; *Perfection Paint & Color Co.* v. *Konduris* (1970), 147 Ind. App. 106, 258 N.E. 2d 681; *Gabbard* v.

*Stephenson's Orchard, Inc.* (Mo. App. 1978), 565 S.W. 2d 753; *Cintrone* v. *Hertz Truck Leasing & Rental Service* (1965), 45 N.J. 434, 212 A. 2d 769; *Stang* v. *Hertz Corp.* (1972), 83 N.M. 730, 497 P. 2d 732; *Nastasi* v. *Hochman* (1977), 58 A.D. 2d 564, 396 N.Y.Supp. 2d 216; *Dewberry* v. *LaFollette* (Okla. 1979), 598 P. 2d 241; *Fulbright* v. *Klamath Gas Co.* (1975), 271 Ore. 449, 533 P. 2d 316; *Tillman* v. *Vance Equip. Co.* (1979), 286 Ore. 747, 596 P. 2d 1299; *Francioni* v. *Gibsonia Truck Corp.* (1977), 472 Penn. 362, 372 A. 2d 736; *Nath* v. *National Equip. Leasing Corp.* (1981), 497 Penn. 126, 439 A. 2d 633; *Brimbau* v. *Ausdale Equip. Rental Corp., supra; Rourke* v. *Garza* (Tex. Civ. App. 1974), 511 S.W. 2d 331; *George* v. *Tonjes* (D.C. Wis. 1976), 414 F. Supp. 1199.

The trial court erred in directing a verdict for BCJ because there was a reasonable basis to hold BCJ, a commercial lessor, liable to plaintiff, a user, for injuries sustained from use of the motor home that was alleged to be in a defective condition because of design. Furthermore, plaintiff should have been accorded the opportunity to show that BCJ was aware that the tires supplied with the motor home were inadequate for its load as a basis for liability, and that it failed to warn plaintiff of that defect, since the opening statement gave rise to a possible claim against BCJ and not all evidence supporting the claim need be stated.

BCJ argues that even if strict liability principles are held to include commercial rental and lease transactions, occasional or isolated transactions should not be included. That rule may be applicable to non-commercial, occasional lessors, see *Bachner* v. *Pearson, supra,* but that distinction should not be drawn based upon the amount of activity of a corporation formulated for the purpose of engaging in the business of leasing the product involved. Instead, the inquiry should be whether the lessor is in the business of leasing the product in the same sense as a

seller of a product is in the business of manufacturing, selling or retailing the product. See *Price* v. *Shell Oil Co., supra; Nastasi* v. *Hochman, supra.*

BCJ also argues that if there was error it was not prejudicial to plaintiff. This argument is predicated upon the fact that plaintiff recovered a jury verdict against GMC in the sum of $60,000, which as stated would include all damages that plaintiff would be entitled to even had the judgment been joint and several against GMC and BCJ. However, there is no evidence before this court that the judgment has been fully satisfied. The effect of plaintiff's judgment against GMC is a matter that may be explored by the trial court upon remand.

Plaintiff next asserts that the trial court erred in excluding the GTR recall letter. BCJ was not involved in this ruling because BCJ had been dismissed as a party-defendant after the opening statement and before the attempted introduction of this evidence. However, plaintiff asserts the error in order to avoid a claim that the trial court's ruling establishes the law of the case for future trials if the claimed error was not asserted on appeal and for the purposes of judicial economy in the event that this issue arises in a future trial.

GTR recalled the radial tires used on the GMC motor home involved herein sometime after the accident on the basis of their determination that the tires "when used in conjunction with a GMC motor home contain a defect which relates to motor vehicle safety * * *." The issue, as far as BCJ is concerned for future litigations, is whether the recall letter is admissible to prove a defect in the motor home by being equipped with insufficient tires.

The recall letter is not admissible against BCJ. It is hearsay designed to prove the truth of the matter stated therein, which is that "defective" tires were used on the GMC motor home. There is no exception to the hearsay rule that is applicable to BCJ. Hence, the recall letter is not admissible against BCJ.

Plaintiff's second assignment of error is overruled.

Plaintiff finally asserts that the trial court erred in permitting Officer Jenis to testify that Axel Baudach, the driver of the motor home, told him in the emergency room that "I may have dozed off for a second."

Axel was a seventeen-year-old German exchange student who was driving the vehicle at the time that it collided with the guardrail. He was taken to the hospital where he was questioned by Jenis while being treated for injuries sustained in the accident. At the hospital, Jenis had already concluded that the accident occurred because the driver had fallen asleep. The officer asked Axel if he had fallen asleep, and Axel stated that he had not. Jenis then testified that he stated his reasons to Axel as to why he felt that Axel had fallen asleep and that Axel then said, "Well, I may have dozed off for a second."

The trial court admitted Officer Jenis' statement as an exception to the hearsay rule pursuant to Evid. R. 803(2), entitled "Excited utterance." To be an excited utterance, it must be "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Considerations that are to be taken into account to determine whether an utterance qualifies as an excited utterance under the exception to the hearsay rule are: "* * * (a) the lapse of time between the event and the declaration, (b) the mental and physical condition of the declarant, (c) the nature of the statement and (d) the influence of intervening circumstances." See Staff Note, Evid. R. 803(2).

There is discretion on the part of the trial court in weighing these factors. However, the testimony shows that the response was not a spontaneous excited utterance but a considered answer in

response to questions. While it may qualify as a statement against interest pursuant to Evid. R. 804(B)(3), if the circumstances required by that rule can be established, it was not properly admitted as an excited utterance. Also, assuming that the proper foundation was established, as required by Evid. R. 613(B), the statement could be admissible as extrinsic evidence of a prior inconsistent statement of a witness. The foundation laid at trial was initially insufficient, as the witness was only asked if he had testified to what he told the police officer without being asked specifically about the claimed statement. However, in rebuttal, Axel was permitted to explain the circumstances and he denied making the statement.

The error, if any, of the trial court was not prejudicial since the statement was not admitted against BCJ, which had previously been dismissed from the case.

Plaintiff's third assignment of error is overruled.

Plaintiff's first assignment of error is sustained and plaintiff's second and third assignments of error are overruled. The judgment of the trial court, as respects BCJ, is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and case remanded.*

WHITESIDE, P.J., and MOYER, J., concur.