Mary Ellene KEMP, and Walter Albert Kemp, Plaintiffs-Appellants,

v.

Goldie Marie MILLER and Civilian Health & Medical Program of the Uniform Services, Defendants,

BUDGET RENT-A-CAR SYSTEMS, INC., a foreign corporation, Defendant-Third Party Plaintiff-Respondent-Cross Appellant,

FORD MOTOR COMPANY, a foreign company, Third Party Defendant-Cross Respondent.

Supreme Court

*No. 88-1911. Argued January 25, 1990.—Decided April 16, 1990.*

(Also reported in 453 N.W.2d 872.)

For the plaintiffs-appellants there were briefs (in court of appeals) and oral argument by Lew A. Wasserman, Milwaukee.

For the defendant-third party plaintiff-respondent-cross appellant there were briefs (in court of appeals) by *David A. Roth* and *Peregrine Law Offices,* Milwaukee, and *Neil D. O'Connor* and *O'Connor & Schiff,* Chicago, Illinois, and oral argument by *Neil O'Connor.*

For the third party defendant-cross respondent there was a brief (in court of appeals) by *James R. Clark* and *Jerome M. Organ* and *Foley & Lardner,* Milwaukee and *Gary L. Hayden* and *Ford Motor Company,* of counsel, Dearborn, Michigan, and oral argument by *Mr. Clark.*

LOUIS J. CECI, J.   This case is before the court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats. The plaintiffs, Mary Ellene Kemp and Walter Albert Kemp, commenced a personal injury action against the defendant, Budget Rent-A-Car Systems, Inc. (Budget), alleging, *inter alia,* that Budget had rented a defective and unreasonably dangerous vehicle to Mary Kemp. The plaintiffs further alleged that Budget was strictly liable in tort for injury sustained by the plaintiffs as a result of the defective and unreasonably dangerous condition of the vehicle. Budget, in turn, commenced a third-party action against Ford Motor Company (Ford), the manufacturer of the vehicle, alleging that if the rental car were in fact defective, Budget would be entitled to indemnification or contribution from Ford in accordance with law.

The plaintiffs appeal and Budget cross-appeals from a judgment of the circuit court for Milwaukee county, Patricia S. Curley, Circuit Judge. The circuit court granted summary judgment in favor of Budget and Ford, dismissing the complaint and the third-party complaint filed against those parties. In granting summary judgment, the circuit court ruled that Budget was not a man-

ufacturer or a seller of products under Wisconsin's strict products liability law and that the plaintiffs had, therefore, failed to state a claim against Budget. The circuit court further ruled that, even if the plaintiffs had stated a products liability claim, there was insufficient evidence in the record from which a reasonable jury could conclude that the rental car was defective at the time that it left the possession and control of either Budget or Ford.

Two issues are presented on this appeal. The first issue is whether a commercial lessor may be held strictly liable in tort for damages resulting from the lease of a defective and unreasonably dangerous product; and, if so, whether such liability is limited to manufacturing and design defects or whether it extends to defects occurring after the product leaves the manufacturer. The second issue is whether the circuit court erred in granting summary judgment to Budget and Ford. We hold that a commercial lessor may be held strictly liable in tort for damages resulting from the lease of a defective and unreasonably dangerous product and that such liability extends both to manufacturing and design defects and to defects arising after the product leaves the manufacturer. We further hold that the circuit court erred in granting summary judgment in this case. Accordingly, we reverse the judgment of the circuit court.

The facts of this case follow. On January 29, 1985, Mary Ellene Kemp (Kemp) rented a 1984 Ford Tempo GL from Budget's airport office in Milwaukee, Wisconsin. The rental car had been manufactured by Ford and had been purchased new by Budget from an authorized Ford dealer. Kemp drove the car to Kenosha, Wisconsin, where she picked up her two sisters, Nora Coan and Goldie Miller (Miller). The sisters then drove together to Craigsville, West Virginia, where they attended their brother's funeral.

On February 2, 1985, the sisters were traveling back to Wisconsin from West Virginia. At approximately 7:30 p.m., Miller was driving westbound on Interstate Highway 70 near Cambridge, Ohio. The road was wet from melting snow which had fallen earlier in the day. As the sisters approached an overpass on Interstate 70, they heard a loud noise which sounded like a gunshot or a blowout. Upon hearing the sound, Miller applied the brakes and the rental car fishtailed. Miller then lost control of the car. The vehicle first spun clockwise, causing the right front fender portion of the car to hit a bridge abutment. The vehicle then spun in the opposite direction and came to rest facing east in the right-hand lane of westbound traffic. The sisters quickly exited the vehicle.

Shortly thereafter, a semi truck approached the scene of the accident. The driver of the semi was traveling in the right-hand lane of westbound traffic when he observed the rental car in the middle of that lane. The driver attempted to avoid the rental car, but struck the car in the area of the right front fender. The individuals who towed the rental car from the scene of the accident informed the sisters that no tire had blown on the car but that the right front tie rod of the car was broken.

Kemp and her husband, Walter Albert Kemp, commenced an action against Miller and Budget for damages resulting from personal injuries sustained by Kemp during the one-car accident. The plaintiffs alleged that Miller had been negligent in controlling the vehicle and that Budget had been negligent in maintaining and servicing the vehicle.[1] The plaintiffs further alleged that Budget was strictly liable in tort for damages resulting from the lease of a defective and unreasonably dangerous

---

[1] The plaintiffs subsequently stipulated to the dismissal of their negligence claim against Budget.

vehicle. Budget commenced a third-party action against Ford, alleging that Ford had manufactured and designed the vehicle and that if it were in fact defective, Budget would be entitled to contribution or indemnification from Ford in accordance with law. The plaintiffs did not sue Ford directly.

Budget subsequently filed a motion for summary judgment against the plaintiffs, arguing that it was neither a manufacturer nor a seller under Wisconsin's strict products liability law and that the plaintiffs had, therefore, failed to state a products liability claim against it. Budget further argued that even if the plaintiffs had stated a claim, they had failed to show that the vehicle was in a defective condition when it left Budget's possession and control. Ford similarly filed a motion for summary judgment against Budget, arguing, *inter alia*, that the plaintiffs had failed to show that the vehicle was in a defective condition when it left Ford's possession and control. In this regard, Ford's motion sounded against the plaintiffs.

In support of their respective motions, Budget and Ford relied on the affidavits of two consulting engineers who had been employed by Budget to examine the rental car and to test the fractured surfaces of the tie rod. The engineers concluded that the tie rod was not bent, cracked, or broken before the accident but that it broke during the accident when the rental car hit the bridge abutment or when the semi truck hit the rental car. Budget relied, in addition, on the deposition testimony of James Savignac who served as the operations manager of Budget's airport office in Milwaukee, Wisconsin, in February of 1985. Savignac testified that Budget follows a preventive maintenance program for all its rental cars and that, to his knowledge, no work had been performed on either the steering components or the body of the

rental car prior to the time that it was delivered to Kemp. Savignac further testified that he was not aware of any consumer complaints or manufacturer recalls concerning the rental car prior to the time that it was delivered to Kemp.

In opposition to the motions for summary judgment, the plaintiffs relied, in part, on the deposition of Stanley Weiss, an engineer experienced in the failure of metallic systems. Weiss examined, *inter alia,* a tie rod exemplar identical to the right front tie rod of the rental car; the report of Budget's consulting engineers; the deposition of Miller relating the facts of the accident; and information supplied by the National Highway Traffic Safety Administration and Department of Transportation concerning manufacturer recalls, consumer complaints, and defect investigations on 1984 Ford Tempos. Based on his examination of those materials, Weiss gave his opinion, to a reasonable degree of engineering certainty, that the noise heard by the sisters prior to the accident was the breaking of the tie rod and that the broken tie rod substantially caused the accident.

The plaintiffs relied, in addition, on the deposition of Royce Donner, an engineer experienced in accident reconstruction and design and failure analysis. Donner reviewed photographs of the rental car after the accident; copies of the accident reports; the depositions of Miller and Kemp relating the facts of the accident; and the accident witness statements of Miller and the driver of the semi truck. Based on his review of those materials, Donner gave his opinion, to a reasonable degree of engineering certainty, that if the noise heard by the sisters was the breaking of the tie rod, then the tie rod "was substandard and most likely was defective."

The circuit court heard the motions for summary judgment on July 18, 1988. By order entered August 12,

1988, the circuit court granted summary judgment to Budget and Ford, dismissing the complaint and the third-party complaint filed against those parties. In granting the motions, the circuit court ruled that Budget was not a manufacturer or a seller of products under Wisconsin's strict products liability law and that the plaintiffs had, therefore, failed to state a products liability claim against Budget. The circuit court further ruled that, even if the plaintiffs had stated a products liability claim, there was insufficient evidence in the record from which a reasonable jury could conclude that the rental car was defective at the time that it left the possession or control of either Budget or Ford.

The plaintiffs appeal and Budget cross-appeals from the judgment of the circuit court. The court of appeals certified the appeal to this court. We accepted the certification.

The first issue before this court is whether a commercial lessor may be held strictly liable in tort for damages resulting from the lease of a defective and unreasonably dangerous product. This court first adopted the rule of strict products liability, as set forth in the Restatement (Second) of Torts sec. 402A (1965), in *Dippel v. Sciano,* 37 Wis. 2d 443, 155 N.W.2d 55 (1967). That section provides:

> Section 402A.  Special Liability of Seller of Product for Physical Harm to User or Consumer
>
> (1)  One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a)  the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The rule of strict products liability offers the plaintiff a theory of recovery for damages resulting from defective and unreasonably dangerous products independent of negligence and implied warranty law. The rule of strict liability, therefore, relieves the plaintiff of the difficult task of proving specific acts of negligence and insulates the plaintiff from the implied warranty defenses of notice of breach, disclaimer, and lack of privity. *See Dippel,* 37 Wis. 2d at 460. In justification of the imposition of strict liability on a seller or manufacturer of defective and unreasonably dangerous products, the *Dippel* court noted:

[T]he seller is in the paramount position to distribute the costs of the risks created by the defective product he is selling. He may pass the cost on to the consumer via increased prices. He may protect himself either by purchasing insurance or by a form of self-insurance. In justification of making the seller pay for the risk, it is argued that the consumer or user has the right to rely on the apparent safety of the product and that it is the seller in the first instance who creates the risk by placing the defective product on the market. A correlative consideration, where the manufacturer is concerned, is that the manufacturer

550

has the greatest ability to control the risk created by his product since he may initiate or adopt inspection and quality control measures thereby preventing defective products from reaching the consumer.

*Id.* at 450–51.

The rule of strict products liability does not make the manufacturer or the seller an insurer nor does it impose absolute liability. *Id.* at 459–60. Rather, the plaintiff is required to prove that the product was in a defective condition when it left the possession or control of the seller; that it was unreasonably dangerous to the user or consumer; that the defect was a cause or a substantial factor of the plaintiff's injuries or damages; that the seller was engaged in the business of selling the product or, put negatively, that the sale was not an isolated or infrequent transaction not related to the principal business of the seller; and that the product was expected to and did reach the user or consumer without substantial change in the condition in which it was sold. *Id.* at 460. Once the plaintiff has met its burden of proof, the seller is deemed negligent *per se* and may avail himself or herself of the defenses of contributory negligence. *Id.* at 460–62.

To date, this court has applied the rule of strict products liability only to manufacturers and sellers. Budget and Ford argue that Restatement (Second) of Torts sec. 402A, on its face, applies only to those who sell defective and unreasonably dangerous products. They maintain that the liability of commercial lessors is not covered by the provisions of sec. 402A but, instead, is expressly set forth in Restatement (Second) of Torts secs. 407 and 408 (1965). Under those sections, a lessor is subject to liability only if he or she knew or had reason to know that the leased product was dangerous or was

551

likely to be dangerous for the purpose for which it was used or if he or she failed to exercise reasonable care to make the leased product safe for immediate use or to disclose its actual condition to those who might be expected to use it.

The plaintiffs argue, however, that the references in sec. 402A to "sale" and "seller" should be construed broadly to carry out the underlying purpose of strict products liability. The plaintiffs maintain that the rule of strict liability has its purpose in protecting the public from the harm of defective products and in placing the responsibility for the safety of products on any person who enters the business of supplying those products to the consuming public. *See generally* Restatement (Second) of Torts sec. 402A comment f (1965). Accordingly, the plaintiffs contend that what is material to the application of strict liability is not the precise means of marketing but rather the fact of marketing itself. The plaintiffs argue that a commercial lessor places goods in the stream of commerce in a manner analogous to a manufacturer or seller and, therefore, should be held strictly liable for the distribution of defective and unreasonably dangerous products.

The rule of strict products liability was first applied to commercial lessors in the seminal case of *Cintrone v. Hertz Truck Leasing, Etc.*, 45 N.J. 434, 212 A.2d 769 (1965). In that case, the plaintiff was injured as a result of a brake failure on one of the vehicles leased by his employer from Hertz. Under the terms of the lease, the vehicles were kept on the lessee's premises but Hertz agreed to service, repair, and maintain them. The plaintiff sued Hertz for breach of implied warranty and negligence in maintaining the vehicle. The trial court dismissed the warranty claim but submitted the negligence claim to the jury, which found for Hertz. On appeal, the

New Jersey Supreme Court reversed the trial court's dismissal of the warranty claim and held that the lease agreement gave rise to an implied warranty that the vehicles would be fit for the lessee's use throughout the lease period and that the nature of the U-drive-it business was such that Hertz's responsibility might properly be stated in terms of strict liability. *Id.,* 45 N.J. at 448–49, 212 A.2d at 777.

In rejecting the notion that the rule of strict products liability was restricted to transactions involving a sale of goods, the *Cintrone* court stated:

> A bailor for hire, such as a person in the U-drive-it business, puts motor vehicles in the stream of commerce in a fashion not unlike a manufacturer or retailer. In fact such a bailor puts the vehicle he buys and then rents to the public to more sustained use on the highways than most ordinary car purchasers. The very nature of the business is such that the bailee, his employees, passengers and the traveling public are exposed to a greater *quantum* of potential danger of harm from defective vehicles than usually arises out of sales by the manufacturer . . ..
>
> . . . .
>
> Most of the significant criteria which in sales transactions . . . support a cause of action based on strict liability in tort, are present in the type of lessor-lessee relationship now before us: (1) The risk of harm to the lessee, his employees, passengers, and members of the public from the operation of a defective [vehicle] on the highways is great; (2) the representation of the lessor that the vehicles are fit for use for the lessee's purposes is of major proportions . . ..; (3) the reliance of the lessee on the representation of the lessor is bound to be great . . .. [Indeed], the inducement offered to the consumer through advertising and solicitation encourages reliance by him on

the fitness of the vehicle and on the skill and expertise of the lessor [to maintain the vehicle].

*Id.,* 45 N.J. at 450, 456, 212 A.2d at 777, 781 (emphasis in original; punctuation altered).

Since the decision in *Cintrone,* numerous courts which have confronted the precise issue presented on this appeal have adopted and followed the reasoning of the New Jersey Supreme Court.[2] We are mindful of the rapid growth of the commercial leasing industry in recent years. We too are persuaded that the policy considerations which justify the imposition of strict liability on sellers and manufacturers apply to those who are engaged in the business of leasing products to the consuming public.

Like manufacturers and sellers, persons in the business of leasing continually introduce potentially dangerous instrumentalities into the stream of commerce. A

[2]*See* Annotation, *Products Liability: Application of Strict Liability in Tort Doctrine to Lessor of Personal Property,* 52 A.L.R.3d 121 (1973). *See also Miles v. General Tire & Rubber Co.,* 10 Ohio App. 3d 186, 460 N.E.2d 1377 (Ct. App. 1983); *Brimbau v. Ausdale Equipment Rental Corp.,* 440 A.2d 1292 (R.I. 1982); *Dewberry v. LaFollette,* 598 P.2d 241 (Okla. 1979); *Gabbard v. Stephenson's Orchard, Inc.,* 565 S.W.2d 753 (Mo. Ct. App. 1978); *Francioni v. Gibsonia Truck Corp.,* 472 Pa. 362, 372 A.2d 736 (1977); *Martin v. Ryder Truck Rental, Inc.,* 353 A.2d 581 (Del. 1976); *Gilbert v. Stone City Constr. Co., Inc.,* 171 Ind. App. 418, 357 N.E.2d 738 (Ct. App. 1976); *Fulbright v. Klamath Gas Co.,* 271 Or. 449, 533 P.2d 316 (1975); *Stang v. Hertz Corp.,* 83 N.M. 730, 497 P.2d 732 (1972); *Rourke v. Garza,* 530 S.W.2d 794 (Tex. 1975); *Galluccio v. Hertz Corp.,* 1 Ill. App. 3d 272, 274 N.E.2d 178 (App. Ct. 1971); *Price v. Shell Oil Co.,* 2 Cal. 3d 245, 466 P.2d 722, 85 Cal. Rptr. 178 (1970); *Bachner v. Pearson,* 479 P.2d 319 (Alaska 1970); *Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 470 P.2d 240 (1970).

commercial lessor is in a far better position than the lessee to distribute the cost of compensating product-related injuries by purchasing liability insurance and by adjusting the rent paid for the leased product to reflect this cost. In addition, the commercial lessor has the physical facilities and the technical competence and expertise to prevent the circulation of defective products by assuring that his or her products are constantly maintained in a safe condition. Further, by placing products in the stream of commerce and by advertising, the commercial lessor impliedly represents to the lessee that those products are safe for use during the term of the lease. *See* Ausness, *Strict Liability for Chattel Leasing,* 48 U. Pitt. L. Rev. 273, 324–27 (1987) [hereinafter *Chattel Leasing]*.

In fact, as noted by the New Jersey Supreme Court in *Cintrone,* 45 N.J. 434, 212 A.2d 769, the policy considerations which support the imposition of strict liability on manufacturers or sellers of defective and unreasonably dangerous products arguably apply with greater force in the case of commercial lessors. The nature of the leasing industry is such that leased products are introduced and reintroduced into the consumer market with each new lease and are, therefore, put to more sustained use than are products owned by the user. *Id.,* 45 N.J. at 450, 212 A.2d at 777; *see also Brimbau v. Ausdale Equipment Rental Corp.,* 440 A.2d 1292, 1298 (R.I. 1982). The lessee has less opportunity than a buyer to select which product he or she will lease and to inspect a product for defects before leasing it. Thus, the lessee is forced to rely to a greater extent than a buyer on the lessor's technical skill and judgment and on his or her implied assurance that a product will be safe for use during the term of the lease. *See id.; George v. Tonjes,* 414 F. Supp. 1199, 1201 (W.D. Wis. 1976).

In an effort to limit the rule of strict liability in lease transactions, Budget argues that a commercial lessor leases used products and, therefore, should be subject to strict liability to the same extent as a seller of used products. Budget contends that in *Burrows v. Follett & Leach, Inc.,* 115 Wis. 2d 272, 340 N.W.2d 485 (1983), this court concluded that a seller of used products was subject to strict liability for manufacturing and design defects but was not subject to strict liability for defects arising after a product left the manufacturer and the original seller. Accordingly, Budget maintains that a commercial lessor, like a seller of used products, may not be held strictly liable for defects that arise in a leased product after it leaves the manufacturer and the original seller and while it is under the ownership and control of the lessor. We disagree.

▮▮▮▮

The rationale underlying the imposition of strict liability on manufacturers and sellers is that the risk of loss associated with the use of defective products should be borne by those who have created the risk and who have reaped the profit by placing a defective product in the stream of commerce. *See id.* at 284. Although a seller may be held strictly liable for damages resulting from a defective product, a seller who has neither created nor assumed the risk of loss associated with the use of a defective product is entitled to indemnity from the manufacturer. Thus, in the usual case, losses resulting from the use of a defective product will ultimately be borne by those who are responsible for creating the defect and who are in a position to implement procedures to prevent the occurrence of similar defects in the future. *See id.*

This court's decision in *Burrows* is based on the realization that the imposition of strict liability on a

seller of used products, for defects that arise after manufacture and before the product reaches the seller, places the risk of loss associated with the use of defective products on one who has neither created nor assumed the risk and on one who is not in a position to implement procedures to avoid the distribution of defective products in the future. Defects in a used product typically arise before the product reaches the seller and while the product was in the hands of an unknown previous owner. The used product seller is rarely familiar with the prior history of the products he or she sells and can discover and correct latent defects in those products only at great cost by means of individual inspection. *See Chattel Leasing,* 48 U. Pitt. L. Rev. at 334. Further, the used goods market generally operates on the understanding that the seller makes no particular assurance as to quality simply by offering a product for sale. *See Tillman v. Vance Equipment Co.,* 286 Or. 747, 755, 596 P.2d 1299, 1303 (1979).

However, the imposition of strict liability on a commercial lessor, for defects that arise after manufacture and while the product is under the ownership and control of the lessor, places the risk of loss associated with the use of defective products on one who created and assumed the risk and on one who can implement procedures to avoid the distribution of defective products in the future. Defects in a leased product may surface or be discovered after the product reaches the lessor. The commercial lessor is familiar with the characteristics and prior history of the products he or she leases and is in a position to discover and correct defects in those products by means of routine inspection, servicing, and repair. Further, by placing products on the market, the commercial lessor impliedly represents that those products will

557

be fit for use throughout the term of the lease and, consequently, assumes the risk of damages resulting from a defective product. *See Chattel Leasing,* 48 U. Pitt. L. Rev. at 334.

Accordingly, we hold that a commercial lessor may be held strictly liable in tort for damages resulting from the lease of a defective and unreasonably dangerous product. We further hold that such liability extends not only to design and manufacturing defects but also to defects which arise after the product leaves the manufacturer's control. In proving an action in strict liability against a commercial lessor, the plaintiff must establish that the product was in a defective condition when it left the possession or control of the manufacturer or the lessor; that it was unreasonably dangerous to the user or consumer; that the defect was a cause or a substantial factor of the plaintiff's injuries or damages; that the lessor was engaged in the business of leasing the product or, put negatively, that the lease was not an isolated or infrequent transaction not related to the principal business of the lessor; and that the product was expected to and did reach the user or consumer without substantial change in the condition in which it was leased.

The second issue before this court is whether the circuit court erred in granting summary judgment to Budget and Ford. In reviewing the grant of a motion for summary judgment, this court applies the standards set forth in sec. 802.08(2), Stats., in the same manner as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). There is a standard procedure for evaluating the propriety of a motion for summary judgment. Under that procedure, a court must first examine the pleadings to determine whether a claim

for relief has been stated. If a claim for relief has been stated, a court must then determine whether there are triable issues of material fact which preclude the grant of summary judgment. *Id.* at 314–15. A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Section 802.08(2).

In applying the summary judgment procedure to the facts of this case, we first turn to an examination of the sufficiency of the plaintiffs' complaint against Budget and of Budget's third-party complaint against Ford. In testing the sufficiency of the complaint and the third-party complaint, we take all facts pleaded and all inferences which can reasonably be derived from those facts as true. *Green Spring Farms,* 136 Wis. 2d at 317. Pleadings are to be liberally construed with a view towards substantial justice to the parties. *Id.,* citing sec. 802.02(6), Stats. A complaint should be dismissed as legally insufficient only if it is clear that there are no circumstances under which the plaintiffs can recover. *Id.*

The plaintiffs' complaint against Budget alleges, in relevant part, as follows: (1) that Budget is in the business of renting motor vehicles to the public and that it rented a Ford Tempo to Kemp in the usual course of its business; (2) that the rental car was in a defective and unreasonably dangerous condition for its intended use at the time that it was rented to Kemp; (3) that during the time that the Ford Tempo was rented to Kemp, it was involved in a one-car accident; and (4) that as a proximate result of the defective and unreasonably dangerous

condition of the rental car and the resulting accident, Kemp and her husband, Walter, suffered injury and damages.

At the hearing on the motion for summary judgment, the circuit court noted that, under the prevailing law of Wisconsin, the rule of strict products liability did not extend to a commercial lessor of defective and unreasonably dangerous products. The circuit court, therefore, concluded that the plaintiffs' complaint failed to state a claim for relief against Budget. In light of our determination that a commercial lessor may be held strictly liable for the lease of a defective and unreasonably dangerous product, we conclude that the allegations in the plaintiffs' complaint are sufficient to state a strict products liability claim against Budget.

Budget's third-party complaint against Ford alleges, in relevant part, as follows: (1) that Ford designed, manufactured, and sold a Ford Tempo to one of its authorized Ford dealers; (2) that Budget purchased the Ford Tempo new from an authorized Ford dealer and subsequently rented the vehicle to Kemp; (3) that the rental car was expected to and did reach Kemp without substantial change in its condition; (4) that during the time that the Ford Tempo was rented to Kemp, it was involved in a one-car accident; (5) that Budget was not negligent in maintaining the rental car; and (6) that if the rental car were defective at the time that it was rented to Kemp, then Ford would be liable to Budget for contribution or indemnification in accordance with law.

At the hearing on the motion for summary judgment, the circuit court noted that Ford was clearly a manufacturer of products under Wisconsin's strict products liability law. The circuit court apparently concluded that Budget's third-party complaint was, therefore, suf-

ficient to state a claim against Ford. We too are satisfied that the allegations in Budget's third-party complaint are sufficient to state a claim against Ford for contribution or indemnification in the event that Budget is held liable for damages resulting from an unreasonably dangerous design or manufacturing defect in the vehicle rented to Kemp.

Having determined that the complaint and the third-party complaint are sufficient to state claims for relief under Wisconsin law, we turn to the question of whether there are any triable issues of material fact in this case. The circuit court granted summary judgment to Budget and Ford, concluding that there was insufficient evidence in the record from which a reasonable jury could conclude that the rental car was defective at the time that it left the possession and control of either Budget or Ford. Although the legal standard applied by the circuit court is the correct standard for evaluating the propriety of a motion challenging the sufficiency of the evidence pursuant to sec. 805.14, Stats., it is not the correct standard for evaluating the propriety of a motion for summary judgment.

■

On a motion for summary judgment, a court does not decide whether the evidence presented on the motion is sufficient to support a jury verdict in favor of the nonmoving party but, instead, decides whether the moving party has established a record sufficient to demonstrate to the satisfaction of the court that there is no triable issue of material fact on any issue presented in the case. *Maynard v. Port Publications, Inc.,* 98 Wis. 2d 555, 563, 297 N.W.2d 500 (1980). Summary judgment should not be granted if there is any reasonable doubt concerning the existence of a factual issue or if reasona-

ble inferences leading to conflicting results can be drawn from undisputed facts. *Id.*

Our review of the record made on the motions for summary judgment persuades us that there are triable issues of material fact which require reversal of the circuit court's grant of summary judgment in this case. In support of their motions for summary judgment, Budget and Ford offered evidence that the right front tie rod of the vehicle rented to Kemp was not bent, cracked, or broken before the accident but that it broke during the accident when the rental car hit the bridge abutment or when the semi truck hit the rental car. Budget also offered evidence that the vehicle rented to Kemp was properly maintained after it left the manufacturer and while it was in the possession and control of Budget. The plaintiffs countered this proof with evidence that the noise that the sisters heard prior to the accident was the breaking of the tie rod and that the broken tie rod caused the accident. The plaintiffs also offered evidence that if the noise heard by the sisters was the breaking of the tie rod, then the tie rod could have been defective.

The evidence presented on the motion for summary judgment establishes that there is an issue of material fact concerning whether the rental car was in a defective and unreasonably dangerous condition when it was delivered to Kemp and, if so, whether that defective condition was a substantial cause of the accident. In addition, Budget's uncontradicted evidence that the rental car was properly maintained after it left the manufacturer and while it was in the possession and control of Budget gives rise to a reasonable inference that any proven defect in the rental car arose during the manufacturing process and not while the rental car was in the possession and control of Budget. We therefore reverse

the judgment of the circuit court which dismissed the complaint filed against Budget and the third-party complaint filed against Ford.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.