629 So.2d 169 (1993)
AMERICAN AERIAL LIFT, INC., Appellant,
v.
Jose PEREZ, Appellee.
No. 92-2076.
District Court of Appeal of Florida, Third District.
October 5, 1993.
Opinion Granting Clarification November 30, 1993.
*170 Touby, Smith, Demahy & Drake, and Kenneth Drake, Miami, for appellant.
Panter & Panter, and Mitchell J. Panter, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and HUBBART, JJ.
SCHWARTZ, Chief Judge.
The appellee Perez was seriously injured when he was knocked off a "scissors-lift" which had been commercially leased by the appellant, American Aerial Lift, Inc., to his employer, a painting contractor. He recovered a jury verdict and judgment against American Aerial Lift on the theory that the "scissors-lift" was defectively designed because it employed two chains, rather than a fixed gate, to guard the entrance to the lift and that the upper chain was set too low. We reverse the judgment for a new trial on the liability issues alone.

I.
The lift in question had been manufactured some years before the accident by Mark Industries and sold by its distributor, Mark Equipment Center of South Florida, Inc., to another commercial lessor, American Hi-Lift of Florida, Inc. American Hi-Lift then sold the equipment to the present appellant, American Aerial Lift. While there were conflicts in the evidence as to whether Mark Industries had originally manufactured the lift with the allegedly required gate, there was no question that the gate was not present when the lift was sold to the present appellant, and that it did not alter it thereafter. On the basis of its claim that, if it were negligently or strictly liable for the defect, any or all of the other entities in the distributive chain  manufacturer, distributor, and previous owner  might also be similarly responsible, American Aerial Lift requested the trial court to permit the jury to assess the liability, if any, of those entities on the verdict form. This request was then correctly denied on the basis of our then-extant-and-controlling decision in Fabre v. Marin, 597 So.2d 883 (Fla. 3d DCA 1992). Since that time, however, Fabre was reversed by the Supreme Court in Fabre v. Marin, 623 So.2d 1182 (Fla. 1993). Fabre requires reversal of the judgment below so that the jury may be given the opportunity to apportion the respective liability of these entities.[1]

II.
On the other hand, we hold, in accordance with a unanimity of authority in Florida and elsewhere, that the appellant, as the commercial lessor of the equipment in question, is strictly liable under Restatement (Second) of Torts § 402A (1965) and West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976) for a design defect, such as the one alleged here, which existed at the commencement *171 of the lease.[2]W.E. Johnson Equip. Co. v. United Airlines, Inc., 238 So.2d 98 (Fla. 1970); Amoroso v. Samuel Friedland Family Enter., 604 So.2d 827 (Fla. 4th DCA 1992), review granted, 618 So.2d 1369 (Fla. 1993); Futch v. Ryder Truck Rental, Inc., 391 So.2d 808 (Fla. 5th DCA 1980); Bachner v. Pearson, 479 P.2d 319 (Alaska 1970); Cintrone v. Hertz Truck Leasing & Rental Serv., 45 N.J. 434, 212 A.2d 769 (1965); Miles v. General Tire & Rubber Co., 10 Ohio App.3d 186, 10 OBR 258, 460 N.E.2d 1377 (1983); Kemp v. Miller, 154 Wis.2d 538, 453 N.W.2d 872 (1990); Allan E. Korpela, Annotation, Products Liability: Application of Strict Liability in Tort Doctrine to Lessors of Personal Property, 52 A.L.R.3d 121 (1973).[3] There is no need to repeat here the reasons for that rule which have been explicated in the cited cases far above our poor power to add or detract.
We specifically reject the appellant's claim, however, that it makes any difference that the scissors-lift was apparently a used piece of equipment and that there is an apt analogy between such a case and the rule that sellers of second-hand goods are not ordinarily strictly liable for design defects. See Keith v. Russell T. Bundy & Assocs. 495 So.2d 1223 (Fla. 5th DCA 1986).[4] As was said in Kemp, 154 Wis.2d at 556, 453 N.W.2d at 879:
[B]udget maintains that a commercial lessor, like a seller of used products, may not be held strictly liable for defects that arise in a leased product after it leaves the manufacturer and the original seller and while it is under the ownership and control of the lessor. We disagree.
The rationale underlying the imposition of strict liability on manufacturers and sellers is that the risk of loss associated with the use of defective products should be borne by those who have created the risk and who have reaped the profit by placing a defective product in the stream of commerce... . [Burrows v. Follett & Leach, Inc., 115 Wis.2d 272, 284, 340 N.W.2d 485, 485 (1983)]. Although a seller may be held strictly liable for damages resulting from a defective product, a seller who has neither created nor assumed the risk of loss associated with the use of a defective product is entitled to indemnity from the manufacturer. Thus, in the usual case, losses resulting from the use of a defective product will ultimately be borne by those who are responsible for creating the defect and who are in a position to implement procedures to prevent the occurrence of similar defects in the future. See id.
* * * * * *
... [T]he imposition of strict liability on a commercial lessor, for defects that arise after manufacture and while the product is under the ownership and control of the lessor, places the risk of loss associated with the use of defective products on one who created and assumed the risk and on one who can implement procedures to avoid the distribution of defective products in the future. Defects in a leased product may surface or be discovered after the product reaches the lessor. The commercial lessor is familiar with the characteristics and prior history of the products he or she leases and is in a position to discover and correct defects in those products by means of routine inspection, servicing, and *172 repair. Further, by placing products on the market, the commercial lessor impliedly represents that those products will be fit for use throughout the term of the lease and, consequently, assumes the risk of damages resulting from a defective product... . [See Ausness, Strict Liability for Chattel Leasing, 48 U.Pitt.L.Rev. 273, 334 (1987)].
Accordingly, we hold that a commercial lessor may be held strictly liable in tort for damages resulting from the lease of a defective and unreasonably dangerous product.
Accord Barrett v. Superior Court, 222 Cal. App.3d 1176, 272 Cal. Rptr. 304 (1990); Tillman v. Vance Equip. Co., 286 Or. 747, 596 P.2d 1299 (1979).

III.
Since a new trial is required on grounds unrelated to the damages issue, the new trial shall be confined to issues of the liability of the defendant and of the other entities allegedly responsible for the condition of the defective equipment. See Purvis v. Inter-County Telephone & Telegraph Co., 173 So.2d 679 (Fla. 1965); Griefer v. DiPietro, 625 So.2d 1226 (Fla. 4th DCA 1993), and cases cited; Royal Indemnity Co. v. Muscato, 305 So.2d 228, 229 (Fla. 4th DCA 1974), cert. denied, 321 So.2d 76 (Fla. 1975); Larrabee v. Capeletti Bros., Inc., 158 So.2d 540 (Fla. 3d DCA 1963); see also D.R. Mead v. Cheshire of Fla., Inc., 489 So.2d 830 (Fla. 3d DCA 1986).
Reversed and remanded.

ON MOTIONS FOR REHEARING AND CLARIFICATION
We grant both parties' post-opinion motions only to clarify the issues which must be retried in accordance with our previous opinion. We reject the appellant's contentions that the issues of comparative negligence and the possible liability of other entities, including the plaintiff's employer, should be submitted to the jury. The jury in the first trial found the plaintiff guilty of no contributory negligence whatever. As to the possible responsibility of plaintiff's employer, the defendant adduced no evidence on that issue and did not request that the employer be included on the jury form. 629 So.2d at 170 n. 1. We see no reason why the defendant should be given another bite at either apple.
Similarly, we do not agree with Perez that the liability of American Aerial Lift should not be submitted to the second jury. As we indicated in the initial opinion, "the jury charge on the subject was confusing and defective." 629 So.2d at 171 n. 2. The appellant's liability should be considered by the new jury upon proper instructions.
In sum, we reiterate that
the new trial shall be confined to issues of the liability of the defendant and of the other entities allegedly responsible for the condition of the defective equipment.
629 So.2d at 172. In all other respects, the parties' motions, including the appellant's motion for certification, are denied.
NOTES
[1] There is no claim that the plaintiff's employer was guilty of any negligence in causing the accident. Compare Allied-Signal, Inc. v. Fox, 623 So.2d 1180 (Fla. 1993); Schindler Corp. v. Ross, 625 So.2d 94 (Fla. 3d DCA 1993).
[2] While we agree with the appellant that the jury charge on the subject was confusing and defective, no further discussion of this point is required since the error will undoubtedly be corrected at the retrial which we have already required.
[3] The arguments for this result are summarized as follows:

... (1) in some instances the lessor, like the seller, may be the only member of the marketing chain available to the injured plaintiff for redress; (2) as in the case of the seller, imposition of strict liability upon the lessor serves as an incentive to safety; (3) the lessor will be in a better position than the consumer to prevent the circulation of defective products; and (4) like sellers and manufacturers, commercial lessors and bailors are in a position to control their risk through the adoption of inspection and maintenance procedures and to pass on to the lessee the costs of the protective measures and of insurance.
3 American Law of Products Liability 3d § 36:19, at 24-25 (1987) (footnotes omitted).
[4] Indeed, Keith, which involved a seller of a used piece of machinery, was decided by the same court which had earlier emphatically adopted the rule that a lessor is strictly liable. Futch.